IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ELI LILLY AND COMPANY, an Indiana Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:08-cv-1720DFH-TAB |
| VALEANT PHARMACEUTICALS INTERNATIONAL, a Delaware Corporation, | ) ) ) ) | |
| Defendant/Counterclaim-Plaintiff, | ) ) ) | |
| v. | ) ) | |
| ELI LILLY AND COMPANY, Counterclaim-Defendant. | ) ) ) | |

**VALEANT PHARMACEUTICALS INTERNATIONAL'S
MOTION TO COMPEL ELI LILLY AND COMPANY TO PRODUCE
<u>DOCUMENTS AND ANSWER INTERROGATORIES</u>**

Defendant Valeant Pharmaceuticals International ("Valeant"), by and through its attorneys, moves this court for entry of an order compelling Plaintiff Eli Lilly and Company ("Lilly") to produce certain documents and answer certain interrogatories.  In support of this motion, Valeant states as follows:

<u>**INTRODUCTION**</u>

Valeant seeks an order compelling Lilly to produce documents responsive to Document Request Nos. 1-8, 10, 11, and 13-14 from Valeant's First Set of Requests for Production of Documents to Lilly ("Document Requests").  Valeant also seeks an order compelling Lilly to

answer Interrogatory Nos. 1-4 and 6-7 from Valeant's First Set of Interrogatories ("Interrogatories").[1]

Pending before the Court are three motions that relate to the parties' positions on various discovery matters: Valeant's Rule 56(f) Motion; Lilly's Motion to Bifurcate or Stay Certain Discovery; and Lilly's Motion to Amend Case Management Plan. Since Lilly filed its Motion to Stay or Bifurcate Discovery on September 14, 2009, Lilly has not produced any discovery to Valeant. Thus, as a practical matter, Lilly's discovery to Valeant has been "stayed." Nonetheless, in Lilly's most recent brief, Lilly states that: Valeant "*has not sought relief from the Court*" in connection with Lilly's failure to provide discovery. (Lilly's Reply in Support of Motion to Amend Case Management Plan [Docket No. 58], at 4 (emphasis added).) Lilly's argument implies that Valeant has somehow failed to reserve its rights. Thus, Valeant hereby files this Motion to Compel, to counter Lilly's suggestion that the three previously briefed motions do not adequately demonstrate and preserve Valeant's position that Lilly should be forced to produce discovery in this matter and that Lilly's objections are unfounded.

Valeant believes this Motion to Compel will be rendered moot either entirely or largely after the Court has an opportunity to rule on the three pending motions. Valeant respectfully states that it is not seeking a ruling on this motion prior to the time the Court has an opportunity to consider those three motions. For the Court's reference, in each section of this motion, Valeant states whether Valeant expects the particular matter to be rendered moot by rulings on specific earlier filed motions.

---

[1] This Court should also compel Lilly to produce witnesses for deposition at a reasonable time after written discovery has been conducted. Lilly has effectively made deposition practice impossible by refusing to produce any documents in this case.

## BACKGROUND

On August 13, 2009, Valeant served Lilly with its First Set of Request for Production of Documents and First Set of Interrogatories.  (*See* Valeant's First Set of Requests for Production of Documents to Lilly and Valeant's First Set of Interrogatories, attached as Exhibits A and B.) On September 14, 2009, Lilly served its written objections and responses to Valeant's discovery requests.  (*See* Lilly's Responses to Valeant's First Set of Requests for Production of Documents to Lilly and Lilly's Answers to Valeant's First Set of Interrogatories, attached as Exhibits C and D.)  In its responses, Lilly made numerous objections and substantively refused to respond to any discovery requests.  On the same day that it responded to Valeant's discovery requests, Lilly filed its Motion to Bifurcate or Stay Certain Discovery [Docket No. 48].

In these motions, Lilly's resistance to producing certain discovery has been made clear. But in addition to the briefing, the parties have also telephonically met and conferred about discovery, and subsequent letters were exchanged on October 20, 2009 and October 30, 2009, Lilly has not withdrawn its motion to stay discovery.  (October 20, 2009 Letter to R. Seamands and October 30, 2009 Letter to L. Spacapan, attached as Exhibits E and F.)

A.     **Lilly's Extrinsic Evidence Objections.**

In response to Document Request Nos. 1-4, 7-8, 10, 11, and 13, Lilly objected on the basis that the discovery sought was "Extrinsic Evidence Discovery."  Those document requests seek the following documents:

1.     Drafts of the 2002 Agreement and 2004 Agreement.

2.     Documents and communications relating to the 2004 Agreement, including, but not limited to, (a) internal communications at Lilly, (b) Your communications with Valeant, and (c) Your communications with any third party.[2]

---

[2] As discussed below, the scope of this Document Request has been narrowed by agreement.

3.      Communications relating to Article 10 of the Agreement.[3]

4.      Communications relating to any amounts sought from Valeant pursuant to Article 10 of the Agreement.

7.      Communications between Lilly and any third party, including Valeant, relating to Lilly's decision to retain its own attorneys to defend any Permax product liability claim or lawsuit pursuant to the 2004 Agreement.

8.      Documents relating to any meeting(s) between Lilly and Valeant representatives regarding the negotiation of the 2004 Agreement, including any notes from those meeting(s).

10.     Documents relating to any notice provided to Valeant relating to Lilly's decision to retain and utilize American Document Management in connection with any Permax claim.

11.     Documents relating to any analysis regarding the potential link between valvular heart disease and Permax, including documents relating to the analysis that culminated in the Dear Health Care Professional letters issued by Lilly on February 10, 2003 and November 1, 2004.

13.     Documents listed in Lilly's Preliminary Exhibit List.

(Ex. A.)

In response to each of these document requests, Lilly stated that:

[t]his request seeks Extrinsic Evidence Discovery which, as set forth in Lilly's Motion for Partial Summary Judgment filed on August 24, 2009, and in Lilly's Motion to Bifurcate or Stay Certain Discovery, may not be considered by the Court in determining the parties' intent absent an ambiguity, rendering the Extrinsic Evidence Discovery request irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

(Ex. C.)

Lilly made a similar "Extrinsic Evidence" objection to Interrogatory Nos. 1-4 and 6-7.

Those Interrogatories requested the following information:

---

[3] The scope of this Document Request has also been narrowed by agreement.

1.      Identify all persons that negotiated the 2004 Agreement on behalf of Lilly, including any persons that had any contact with Valeant relating to the 2004 Agreement.

2.      Identify all persons present at any meeting(s) between Lilly and Valeant relating to the negotiation of the 2004 Agreement.

3.      Identify all persons that consulted or advised Lilly regarding the 2004 Agreement prior to its execution.

4.      Identify all communications between Lilly and Valeant relating to the 2004 Agreement that were sent or received prior to its execution.

6.      Identify all persons that negotiated any Permax licensing agreements, including the 2002 Agreement and Lilly's agreements with Élan Pharmaceuticals, Inc. and Athena Neurosciences, Inc.

7.      Identify any claims or potential claims relating to Permax that Lilly was aware of prior to the execution of the 2004 Agreement.

(Ex. B.)

**B.      Lilly's Damages Evidence Objections.**

Lilly also objected to Document Request Nos. 5 and 6 because Lilly was seeking a ruling from the Court bifurcating damages discovery.  Document Request No. 5 seeks "[i]nvoices detailing all legal fees and costs for Permax product liability claims for which Lilly is seeking reimbursement in this litigation."  (Ex. A.)   Request No. 6 seeks "[d]ocuments demonstrating that invoices responsive to Document Request No. 5 were paid by Lilly."  (*Id.*)

Lilly made the following objection in response to both requests:

As set forth in Lilly's Motion to Bifurcate or Stay Certain Discovery, the privilege implications of this request will be able to be more effectively evaluated by the parties after the Court has ruled on Lilly's pending Motion for Partial Summary Judgment.  Additionally, the information sought by this request may be rendered moot in whole or in part by such ruling on Lilly's pending Motion for Partial Summary Judgment, and thus it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Lilly has filed a motion requesting that it have until (30) days after the Court's ruling on Lilly's Motion for Partial Summary Judgment in which to

respond or further object, if necessary, to Valeant's Damages Discovery (including this Request).

(Ex. C.)

## C.    Lilly's Privilege Objections.

Lilly has also objected to certain discovery requests on the basis that they call for privileged information.  Specifically, Lilly objects to Document Request Nos. 2-3, 5, 6, 8, and 14 to the extent that the call for privileged documents.  (Ex. C.)  Lilly also objects to Interrogatory No. 3 on the basis of privilege.  (Ex. D.)  Lilly has not produced a privilege log to-date.

## D.    Lilly's Overbreadth Objections Regarding the Definition of "Relating To."

Lilly has also objected to Document Request Nos. 2 and 3 on the grounds that they are overly broad and unduly burdensome based on Valeant's definition of "relating to."  (Ex. C.)  On October 20, 2009, Valeant agreed to narrow the scope of those two requests to documents relating to the negotiation and drafting of the agreement, the sharing of defense costs, and the parties' indemnification obligations.  (Ex. E.)

## E.    Lilly's Specific Objections to Request No. 14.

Valeant's Document Request No. 14 seeks "[a]ll work product that, under Lilly's interpretation of the Agreement, Valeant is now required to pay for, but has not yet received from Lilly."  (Ex. A.)  Lilly objected to this request on relevance and privilege grounds, and on the basis that Valeant is trying to use Lilly's work product in underlying Permax product liability litigation.  According to the objection:

> This request is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in this contract dispute.  Additionally, this request seeks information protected by the attorney client privilege and work product privilege.  Valeant's Request is an attempt to obtain the work product that Lilly has developed in defending the Product Liability Claims without Valeant having to contribute to the costs of preparing it as required by the parties' Agreement.  Lilly's work

product in defending the Product Liability Claims has no relevance to the contract dispute between Lilly and Valeant, and Valeant is improperly attempting to use discovery in this case to obtain this information for its own use in defending the Product Liability Claims.

(Ex. C.)

**F.     Lilly's Objection That Information and Documents Are Available to Valeant.**

Lilly also objects to discovery requests on the basis that information or documents are "as readily available to Valeant as to Lilly."  Specifically, Lilly objects to Document Request Nos. 1-3 and 11 and Interrogatories 1-2, 4, and 7 on that basis.  (Exs. C and D.)

## ARGUMENT

Lilly's objections are unfounded.  Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."  Fed. R. Civ. P. 26(b)(1); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 995-96 (7th Cir. 2002).  Additionally, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  This standard is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Lilly's objections to the relevant evidence that Valeant seeks are improper for the following reasons:

**I.     Lilly's Extrinsic Evidence Objections Are Improper**.

The arguments Valeant raises in this section with respect to "extrinsic evidence" will likely be moot after the Court has an opportunity to rule on Valeant's Rule 56(f) Motion, Lilly's Motion to Bifurcate or Stay Certain Discovery, and Lilly's Motion to Amend Case Management Plan.  In response to Document Request Nos. 1-4, 7-8, 10, 11, and 13 and Interrogatories 1-4 and 6-7, Lilly objected on the basis that the discovery sought was "Extrinsic Evidence Discovery"

that was irrelevant since the Agreement at issue is unambiguous.  (Ex. C.)  Lilly is wrong for the following reasons:

### A.     Course of Performance Evidence Is Relevant

The parties' course of performing under the contract is central to this dispute.  As demonstrated in Valeant's briefing on the three motions pending before this Court, such evidence is certainly discoverable even if the Agreement is unambiguous.  There are three reasons why course of performance evidence should be discovered now.  First, the UCC applies to the contract between the parties and course of performance evidence is recognized as an exception to the parole evidence rule under the UCC.  Second, whether the UCC applies is considered a fact question under Delaware law. Thus, without discovery, it is premature to determine with finality whether the UCC applies or not.  Third, even if the Agreement is ultimately not found to be governed by the UCC, extrinsic evidence is relevant to Valeant's defenses of estoppel, waiver and acquiescence.

### i.     *The Agreement is governed by the UCC.*

The test for whether the UCC applies to a contract is whether the contract is "predominantly or primarily a contract for the sale of goods." *Neilson Business Equipment Center, Inc. v. Monteleone*, 524 A.2d 1172, 1174 (Del. 1987).  In its Reply in Support of its Motion to Bifurcate or Stay Certain Discovery [Docket No. 55], Lilly attempts to convince the Court that the only document relevant to the UCC analysis is the February 25, 2004 Letter Agreement itself.  Lilly ignores the fact that the letter agreement is an ***amendment*** to the March 29, 2002 Amended and Restated License and Supply Agreement ("Supply Agreement").  (*See* Exs. G and H.)  The letter agreement clearly assigns Amarin, plc's ("Amarin") rights and obligations under the Supply Agreement to Valeant and amends portions of the Supply

Agreement.  (Ex. G.)  The letter agreement repeatedly references and effectively incorporates the Supply Agreement.  The February 25, 2004 Letter Agreement could not function as a stand-alone contract, and Lilly cannot seriously contend that Valeant and Lilly were not bound by the terms of the Supply Agreement which supplied important terms such as the cost of the Permax that Valeant purchased from Lilly for over three (3) years.

Thus, there are actually two contract documents at issue in this litigation: the February 25, 2004 Letter Agreement and the March 29, 2002 Supply Agreements which it amends. Strangely, despite the fact that Lilly argues that the Court should ignore the Supply Agreement (which is actually at issue in this litigation), it contends that the Court should pay special attention to Lilly's predecessor licensing agreement with Athena Neurosciences, Inc. ("Athena") from *1993*.  Athena is not related to Valeant or a party to this litigation. The 1993 agreement is completely irrelevant to the analysis of whether the Agreement at issue is governed by the UCC. Lilly obviously referenced the 1993 agreement so that it could discuss the $36,000,000 license fee Athena agreed to pay pursuant to the 1993 agreement in order to sway the analysis of whether the contract at issue is primarily one for the sale of goods.

When Lilly's attempt at misdirection is ignored and the Athena agreement is properly excluded, it is apparent that the Agreement at issue is primarily one for the sale of goods. Through the February 25, 2004 Letter Agreement, Valeant, Lilly, and Amarin revised the terms of the Supply Agreement.  Valeant stepped into the shoes of Amarin and agreed to purchase large quantities of Permax so that it could distribute the drug nationally.  The primary purpose of the operative documents is Lilly's sale and supply of the product Permax to Valeant.  The other rights and issues discussed in the Agreement are incidental to that primary purpose.  The only payments expressly provided for are payments for the sale price of the product Permax.  (*See* Ex.

H, Article 6.)  There are no payments for services or licenses in the February 25, 2004 Letter

Agreement or the Supply Agreement.

     ii.  *Determining whether the UCC applies is a question of fact that is not yet ripe.*

   Additionally, determining whether the contract is predominantly for the sale of goods is a

question of fact, and Valeant cannot be precluded from arguing that the UCC applies at this stage

of the litigation.  As the Delaware Supreme Court noted in *Monteleone*, "it is necessary for a

court to review the factual circumstances surrounding the negotiation, formation and

contemplated performance of the contract to determine whether the contract is predominantly or

primarily a contract for the sale of goods."  *Id.*  Other courts have held similarly and found that

whether the UCC applies to a mixed contract is ultimately a fact question.  *See, e.g., Auto/Video,*

*v. Chrysler Motors Corp.*, No. 97-9160, 1998 U.S. App. LEXIS 12620, at *3-4 (2d Cir. Apr. 22,

1998) ("The question of whether goods or services predominate is one of fact."); *Creighton*

*Univ. v. GE*, No. 4:08-CV-460, 2009 U.S. Dist. LEXIS 22166, at *28 n.11 (D. Neb. Mar. 18,

2009) (holding that whether UCC applies is a question of fact); *Riddle v. Merck & Co.*, No. 06-

172-GPM, 2006 U.S. Dist. LEXIS 22085, at *20 n.5 (S.D. Ill. Apr. 21, 2006) ("[T]he question of

whether a transaction is predominantly for goods or for services under the Illinois UCC generally

is one of fact."); *Alesayi Bev. Corp. v. Canada Dry Corp.*, 947 F. Supp. 658, 667 (S.D.N.Y.

1996) ("Whether a contract is for the sale of goods or for services provided is a question of

fact."); *Akrosil Div. of Int'l Paper Co. v. Ritrama Duramark, Inc.*, 847 F. Supp. 623, 627 (E.D.

Wis. 1994) ("In a mixed goods and services agreement, the question of whether goods or

services predominate an agreement is a question of fact."); *Double AA Builders, Ltd. v. Grand*

*State Constr. L.L.C.*, 210 Ariz. 503, 510 (Ariz. Ct. App. 2005) ("Determining the predominant

purpose of the contemplated contract is often a question of fact."); *De Groft v. Lancaster Silo*

*Co.*, 72 Md. App. 154, 171 (Md. Ct. Spec. App. 1987) ("[D]etermination of the predominant purpose of a transaction is a question of fact.").

Because the UCC applies to this Agreement, or alternatively, because whether the UCC applies is a fact question that cannot be determined at this stage of the litigation, evidence regarding the parties' course of performance under the agreement remains discoverable and relevant regardless of whether the Agreement is unambiguous.   As one leading commentator has stated, "[t]he UCC clearly indicates that . . . evidence of ***course of performance is an exception to the parol evidence rule***."   5-24 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 24.16 (2009) (emphasis added).     The parties' course of performance is given great weight in interpreting a contract.   Under the Delaware UCC, "[a] course of performance . . . may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement."  *Id.*  Similarly, according to the Restatement (Second) of Contracts:

> Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or ***acquiesced in without objection is given great weight in the interpretation of the agreement.***

RESTATEMENT (SECOND) OF CONTRACTS § 202 (emphasis added).   As explained further in a comment to that section, "[t]he parties to an agreement know best what they meant and their action under it is often the strongest evidence of their meaning."  *Id.* cmt. g; *see also* E. ALLEN FARNSWORTH, FARNSWORTH ON CONTRACTS, § 7.13 (2d ed. 1998) ("[T]he interpretation placed upon a contract by the parties themselves, before a dispute has arisen, is entitled to the greatest weight.").

        iii.    *Evidence regarding the parties' course of performance is also relevant to the defenses of waiver, estoppel, and acquiescence.*

Similarly, evidence that would support a defense of waiver, estoppel, or acquiescence is also relevant even if the Agreement is unambiguous. *See, e.g.*, *AeroGlobal Capital Mgmt., v. Cirrus Indus.*, 871 A.2d 428, 444 (Del. 2005) ("[I]t was for the trier of fact to decide whether Cirrus's conduct under the circumstances of this case evidenced an intentional, conscious and voluntary abandonment of its claim or right."); *Mergenthaler v. M & K Bus Service Inc.*, C.A. No. 90C-12-85, 1995 Del. Super. LEXIS 41, at *6 (Del. Super. Ct. Feb. 22, 1995) (holding that summary judgment was inappropriate because "Plaintiffs failure to demand the . . . increase until December 15, 1989, some five years after the parties entered into the lease agreement may lead a trier of fact to conclude that Plaintiffs waived their right to collect said increased."); *see also Brandywine Dev. Group, LLC v. Alpha Trust*, C.A. No. 19321 NC, 2003 Del. Ch. LEXIS 11, at *13 (Del. Ch. Jan. 30, 2003) (holding that defendant's failure to object to use of easement for four years raised an inference of acquiescence that precluded summary judgment); *see also Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 884 (D. Del. 1994) ("Delaware dictates that summary judgment would not be appropriate in [a] case if a rational trier of fact, viewing the facts in the light most favorable to [the] non-moving party, including any reasonable inferences therefrom, could find evidence invoking estoppel.").

In sum, Lilly has no basis for refusing to respond to Valeant's requests directed to the parties' course of performance under the Agreement.

**B.    Evidence Regarding the Negotiation and Drafting of the Agreement Is Also Relevant Since The Agreement Is Not Unambiguously in Lilly's Favor.**

Additionally, as Valeant has previously argued in its motion papers, evidence regarding the negotiation and drafting of the Agreement is also directly relevant since the Agreement is not

unambiguously in Lilly's favor for several reasons.  <u>First</u>, the term "costs" is undefined in the Agreement.  <u>Second</u>, Delaware courts generally do not interpret the term "costs" to include attorney fees unless explicitly stated in an applicable statute or contract.  *See e.g. Comrie v. Enterasys Networks, Inc.*, No. 19254, 2004 Del. Ch. LEXIS 53, at *16-20 (Del. Ch. April 27, 2004); *Parsons v. Black*, No. 89C-JA-102, 1990 Del. Super. LEXIS 249, at *3-5 (Del. Sup. Ct. June 5, 1990); *White v. Metropolitan Merchandise Mart*, 107 A.2d 892 (Del. Sup. Ct. 1954). <u>Third</u>, the only section that actually mentions attorneys' fees is Section 10.4, which provides that:

> Lilly shall promptly notify Valeant of any Claim brought against Lilly for which Lilly seeks indemnification and shall permit Valeant, at Valeant's cost and expense, to respond to and control the defense of such Claim.  *Lilly shall have the right to participate in any defense to the extent that in its judgment, Lilly will be prejudiced thereby.*

(Ex. G) (emphasis added).  Section 10.5 is a reciprocal provision and, therefore, the terms apply inversely.  Lilly and Valeant have each chosen to participate in product liability cases by retaining their own separate national counsel.

Furthermore, before filing this lawsuit, Lilly never provided any details or invoices regarding Lilly's national counsel attorneys' fees.  This course of performance indicates that the Agreement is at best ambiguous, and to the extent it is clear and unambiguous, it favors Valeant's interpretation.

Additionally, the contract is ambiguous with respect to the interplay between the parties' indemnification and cost sharing obligations in Sections 10.1, 10.2, and 10.3. Lilly contends that the cost-sharing provision in Section 10.3 governs Product Liability Claims and that the indemnification provisions found in Sections 10.1 and 10.2 do not.  Lilly reads one paragraph out

of Article 10 of the Agreement, which is entitled "Indemnification and Insurance," without giving effect to the other paragraphs.

Product Liability Claims are simultaneously subject to the cost-sharing provision in Section 10.3 and the indemnification provisions in Sections 10.1 and 10.2. Lilly ignores the very broad definition of "Claims" in Sections 10.1 and 10.2 -- which clearly includes Product Liability Claims. The parties' differing interpretations of the interplay of the cost-sharing provisions in Section 10.3 and the indemnification provisions in Sections 10.1 and 10.2 demonstrates that the Agreement is ambiguous. *See, e.g., Occidental Chem. Corp. v. Maxus Energy Corp.*, No. 2002-A-0012, 2004 Ohio App. LEXIS 6214, at **17 (Ohio Ct. App. Dec. 10, 2004) (applying Delaware law and holding that interplay between cost sharing and indemnification provisions was ambiguous).

## II.   Lilly's Damages Discovery Objections Are Improper.

The arguments Valeant raises below with respect to damages discovery may be rendered moot by the Court's ruling on Lilly's Motion to Bifurcate or Stay Certain Discovery or Lilly's Motion to Amend Case Management Plan. In any event, Lilly's refusal to produce documents responsive to Document Request Nos. 5 and 6 is directly contrary to the Court's Case Management Plan [Docket No. 30]. Despite Lilly's repeated efforts to establish bifurcated or staged discovery, the current Case Management Plan provides no such limitation on damages discovery. Lilly already proposed bifurcating liability and damages discovery in its proposed Case Management Plan [Docket No. 29], and Judge Baker rejected that proposal. The Court adopted Valeant's position that liability and damages discovery should not be bifurcated and it "overrule[d] Plaintiff's proposal for bifurcation." Accordingly, Lilly has absolutely no basis for preventing damages discovery. Nevertheless, Lilly's refusal to produce damages discovery until

the Court rules on its Motion to Bifurcate or Stay Certain Discovery has operated as a *de facto* bifurcation of discovery.  Lilly's stall tactics are improper, and Valeant seeks an order forcing Lilly to produce the damages discovery that Valeant has requested.

Additionally, Lilly has not posited a single scenario where damages discovery would be irrelevant.  If Lilly prevails on its motion for partial summary judgment, damages evidence is still relevant.  If Lilly loses its motion for partial summary judgment, damages evidence remains relevant because the case will proceed to trial (unless Valeant files its own dispositive motion).

III.   **Most Of Lilly's Privilege Objections Are Improper.**

Lilly raises privilege objections to Document Request Nos. 2-3, 5-6, 8, and 14 and Interrogatory No. 3.  Lilly has not produced a privilege log to-date.  Lilly should do so in a reasonable time, as required unequivocally by Federal Rule of Civil Procedure 26.  While it may be premature to discuss some of Lilly's privilege objections without a log of documents, Valeant addresses certain privilege issues here because of Lilly's statement that Valeant "has not sought relief from the Court."  Valeant does not take issue with Lilly's privilege objections to Document Request Nos. 2, 3, and 8 to the extent that Lilly is only withholding genuinely privileged documents.  Valeant, however, believes the general privilege objections Lilly has raised with respect to certain discovery requests  are improper for the following reasons:

A.   **Interrogatory No. 3 Does Not Call for Privileged Information.**

Valeant's Interrogatory No. 3 asks Lilly to "[i]dentify all persons that consulted or advised Lilly regarding the 2004 Agreement prior to its execution."  (Ex. B.)  Lilly objected to this request on the basis of the attorney-client privilege.  (Ex. D.)  Valeant does not seek information regarding the substance of any communications in Interrogatory No. 3.  Instead, the

Interrogatory only seeks the identity of persons that advised Lilly.  The identities of the individuals or attorneys that may have advised Lilly regarding the Agreement are not privileged.

      **B.**      **Document Request Nos. 5, 6, and 14 Do Not Call For Privileged Documents Because Lilly Has Waived Any Applicable Privilege.**

Lilly objected to Document Request Nos. 5, 6, and 14 on the basis of privilege.  (Ex. C.) Documents responsive to Request Nos. 5, 6, and 14, however, cannot be privileged because Lilly has waived the right to assert any privilege applicable to those documents by seeking the reimbursement of its attorneys' fees in this case.  Document Request No. 5 seeks "[i]nvoices detailing all legal fees and costs for Permax product liability claims for which Lilly is seeking reimbursement in this litigation."   (Ex. A.) Document Request No. 6 seeks "[d]ocuments demonstrating that invoices responsive to Document Request No. 5 were paid by Lilly."  (*Id.*) Document Request No. 14 seeks "[a]ll work product that, under Lilly's interpretation of the Agreement, Lilly is now required to pay for, but has not yet received from Lilly."  (*Id.*)  For the reasons described in Valeant's Response to Lilly's Motion to Stay or Bifurcate Certain Discovery [Docket No. 54], Lilly waived any applicable privilege to these documents by placing them at issue in this litigation.  *See, e.g., Abbott Laboratories v. Alpha Therapeutic*, 200 F.R.D. 401, 411 (N.D. Ill. 2001); *see also Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002); *Ideal Elec. Sec. Co. v. International Fid. Ins. Co.*, 129 F.3d 143, 146 (D.C. Cir. 1997); *Equitable Prod. Co. v. Elk Run Coal Co.*, No. 2:08-cv-00076, 2008 U.S. Dist. LEXIS 105741, at *15 (S.D. W. Va. Oct. 3, 2008).   Accordingly, Lilly's privilege objections are unfounded.

**IV.     Lilly's Overbreadth Objections Regarding the Definition of "Relating To" Are Now Moot.**

Lilly's overbreadth objections to Request Nos. 2 and 3 regarding Valeant's definition of the term "relating to" are now believed by Valeant to be moot and should be withdrawn by Lilly. On October 20, 2009, Valeant agreed to narrow those discovery requests to issues relating to the negotiation and drafting of the Agreement, the sharing of defense costs, and the parties' indemnification obligations.  (Ex. E.)  On October 30, 2009, Lilly did not clearly withdraw the objection to the requests as narrowed.  (*See* Exhibit F (stating that "Lilly does not agree to Valeant's proposed narrowing."))  But on November 10, 2009 in an e-mail Lilly stated that it "is working to prepare documents responsive to Valeant's narrowed requests."  (*See* November 10, 2009 E-mail to L. Spacapan, attached as Exhibit I.)  Accordingly, Lilly cannot object to producing documents responsive to those requests on the basis of its overbreadth objections.

**V.      Lilly's Specific Objections to Document Request No. 14 Are Improper.**

Document Request No. 14 seeks "[a]ll work product that, under Lilly's interpretation of the Agreement, Valeant is now required to pay for, but has not yet received from Lilly."  (Ex. A.) Lilly made a privilege objection to this request.  For the reasons described above in Section III, a privilege objection is improper since Lilly has waived any applicable privilege to the documents requested.  Lilly, however, also made additional specific objections to Document Request No. 14.  Those additional objections are improper for the following reasons:

**A.      Lilly's Relevance Objection to Document Request No. 14.**

Lilly objects to Document Request No. 14 on the grounds that its work product from the underlying Permax product liability claims is irrelevant to this contract dispute.  Lilly states that the request is "overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in this contract dispute."

(Ex. C.)  Lilly is incorrect because as the court explained in *Abbott*, "[t]he documents are the only source to determine the reasonableness of the defense and settlement costs for which [Valeant] is presently being asked to pay." *Abbott*, 200 F.R.D. at 411.  Without being able to examine the work product that Valeant is being asked to pay millions of dollars for, Valeant will have no way to challenge Lilly's calculation of its damages.  Accordingly, these documents are absolutely essential to Valeant's defense and, therefore, they are obviously relevant.

   **B.**   **Lilly's Objection that Valeant Will Use the Work Product in Underlying Litigation.**

Lilly also objected to Request No. 14 on the grounds that Valeant will attempt to use its work product in future Permax product liability claims.  In its objection, Lilly stated that "Valeant's Request is an attempt to obtain work product that Lilly has developed in defending the Product Liability Claims without Valeant having to contribute to the costs of preparing it as required by the parties' Agreement."   (Ex. C.)   Lilly's unsubstantiated accusations are unprofessional, unwarranted, and do not provide a basis for preventing discovery.

Valeant is bound by the terms of the parties' Confidentiality Agreement and Protective Order ("Protective Order") [Docket No. 42] from using discovery in any such manner.  Paragraph 11 of the Protective Order provides that:

> Any disclosure of privileged information between the parties in the present litigation shall not operate as a waiver of any applicable privilege in any other federal or state proceeding, and the parties' agreement regarding the effect of such disclosure of privileged information shall be binding.

Additionally, pursuant to Paragraphs 3(d) and 3(e) of the Protective Order, Lilly's work product would surely be classified as "Confidential Material."   Under Paragraph 18 of the Protective Order, Valeant is obligated to return or destroy any Confidential Materials within sixty (60) days of the termination of this litigation.

Finally, Lilly's accusations that Valeant is just requesting Lilly's work product in order to use it in other cases is a meritless accusation that has no basis in fact.  Although Lilly has raised this argument in its motion papers and objections, Lilly has never explained the rationale or basis for its position that Valeant will steal or improperly use its work product.

**VI.**   **Lilly's Objection That Certain Documents Are Accessible To Valeant Is Improper.**

Lilly objects to Document Request Nos. 1-3 and 11 on the basis that the requests are "overly broad and unduly burdensome in that [they] request[] information as readily available to Valeant as to Lilly."  Similarly, Lilly objects to Interrogatory Nos. 1-2, 4, and 7 on the basis that they "call[] for the disclosure of information as readily available to Valeant as to Lilly."

Lilly's suggestion that Valeant might still have in its possession some of the documents and information that was exchanged by the parties in the past is not a reasonable basis for withholding discovery.  Document Request No. 1 asks for all "[d]rafts of the 2002 and 2004 Agreement."  Valeant obviously does not have copies of Lilly's own drafts of the Agreement, and may never have had such drafts.  Similarly, Valeant clearly does not have copies of Lilly's own correspondence responsive to Request Nos. 2 and 3, which call for "communications relating to the 2004 Agreement . . . including . . . *internal* communications at Lilly" and "[c]ommunications relating to Article 10 of the 2004 Agreement," respectively.

Additionally, even if some of the documents that Valeant seeks were provided to Valeant at the time of the negotiations, that does not suggest Valeant still has those materials at this time. The Agreement was negotiated and executed in February of 2004, and Lilly waited five (5) years to commence this litigation.  The key witnesses at Valeant that negotiated the contract no longer work for Valeant.  Valeant may or may not have information and documents related to the negotiation and drafting of the Agreement and the parties' five-year course of performance under

the Agreement.  In sum, much of the requested material may never have been in Valeant's possession, and even if it previously was shared with Valeant during the negotiations, that does not prove Valeant has access to the information now.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Valeant's Motion to Compel.

WHEREFORE, Valeant respectfully requests that the Court:

     a.     order Lilly to respond to Document Request Nos. 1-8, 10, 11, and 13-14;

     b.     order Lilly to answer Interrogatory Nos. 1-4 and 6-7; and

     c.     grant any other proper relief.

Dated: November 16, 2009               Respectfully submitted,

                                     VALEANT PHARMACEUTICALS
                                     INTERNATIONAL,

                                     By:    /s/ Lise T. Spacapan
                                             One of its Attorneys

Lise T. Spacapan
Elizabeth A. Coleman
Casey T. Grabenstein
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

F. Joseph Jaskowiak
Larry Gene Evans
HOEPPNER WAGNER & EVANS LLP
1000 East 80th Place
Suite 606S
P.O. Box 10627
Merillville, Indiana 46410
Telephone: 219 769-6552
Facsimile: 219 738-2349

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2009, I served **Valeant Pharmaceuticals International's Motion to Compel** to the following via ECF:


Kimberly C. Metzger
Mary Nold Larimore
Rebecca J. Seamands
ICE MILLER LLP
One American Square
P.O. Box 82001
Indianapolis, IN 46204
kimberly.metzger@icemiller.com
larimore@icemiller.com
seamands@icemiller.com


/s/ Casey T. Grabenstein
Casey T. Grabenstein