IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ELI LILLY AND COMPANY, an Indiana Corporation, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, a Delaware Corporation, | ) ) ) ) | Case No.  l:08-cv-1720-SEB-TAB |
| Defendant/Counterclaim-Plaintiff, | ) ) ) | |
| ELI LILLY AND COMPANY, | ) ) | |
| Counterclaim-Defendant. | ) | |

## ELI LILLY AND COMPANY'S RESPONSE IN OPPOSITION TO VALEANT PHARMACEUTICALS INTERNATIONAL'S MOTION TO COMPEL

Eli Lilly and Company ("Lilly"), by counsel, submits this Response in Opposition to Valeant Pharmaceuticals International's ("Valeant's") Motion to Compel ("Motion").  Valeant acknowledges that its Motion will be rendered moot either entirely or largely by the Court's rulings on three pending motions.  (Docket No. 60, p. 2).  Indeed, the issues raised in Valeant's Motion have been the subject of extensive briefing in Valeant's Rule 56(f) Motion (Docket Nos. 46, 47, 50, and 53), Lilly's Motion to Bifurcate or Stay Certain Discovery ("Motion to Bifurcate") (Docket Nos. 48, 49, 54, and 55), and Lilly's Motion to Amend Case Management Plan (Docket Nos. 56, 57, and 58).  Lilly will not impose on the Court's time by reiterating its position on the issues already before it; however, Lilly must address Valeant's failure to meet its obligation to attempt to reach agreement on discovery issues, Lilly's reasonable efforts to provide discovery to Valeant, and Valeant's oppressive attempt to intrude on Lilly's attorney-client

privilege and work product protections while refusing to provide basic non-privileged information on Valeant's costs to Lilly.

## I.     Valeant Failed to Comply with Local Rule 37.1.

Valeant failed to comply with Local Rule 37.1 which requires counsel to submit a separate statement with its motion to compel showing the reasonable efforts made to try and reach agreement with opposing counsel on the matters set forth in the motion.  No such separate statement accompanied Valeant's Motion, and thus its Motion should be denied.  *See Stelor Productions, LLC v. Oogles N Googles et al.*, 2008 WL 5062786, *4 (S.D. Ind. 2008) (denying motion for protective order for failure to comply with Local Rule 37.1).

In its Motion Valeant states that the parties have met telephonically and have exchanged correspondence regarding discovery issues.  However, Valeant has not requested a conference to discuss with Lilly most of the issues raised in its Motion to Compel.  As reflected in the exchange of correspondence dated October 13, 2009 (attached as Exhibits A and B), Valeant previously requested a conference regarding the narrow issue of Lilly's overbreadth objections in response to Valeant's Requests for Production Nos. 2, 3 and 11.  In its correspondence of October 13, Valeant confirmed it was mindful of its meet and confer obligations prior to filing a motion to compel, and stated it would do so at the appropriate time.

Despite this acknowledgement and the rules to the contrary, Valeant filed its Motion without requesting or conducting an attorney conference regarding the issues raised in its Motion.  For instance, Valeant seeks to compel answers to its Interrogatories No. 1-4 and 6-7, yet Valeant has never requested a meet and confer with Lilly regarding interrogatories.  Valeant also has not conferred with Lilly regarding Lilly's objection that many of the materials requested by Valeant are as readily available to Valeant as they are to Lilly.  Lilly should not have to produce

its correspondence with Valeant, as this correspondence should already be in Valeant's files.  If Valeant had an issue with this objection, it should have conferred with Lilly rather than filing its Motion.

Valeant's October 13, 2009 letter states generally that Valeant disagrees with Lilly's view of the work product protection, but Valeant did not request a conference to discuss the disagreement.  Valeant also did not request a conference to discuss its complaints about a privilege log.  Had Valeant asked, Lilly would have explained that, consistent with its obligations under the Federal Rules of Civil Procedure, it will produce a privilege log after completing its production outlined in Section II herein.

Valeant even goes so far as to request that "[t]his Court should also compel Lilly to produce witnesses for deposition at a reasonable time after written discovery has been conducted."  (Docket No. 60, p. 2, n.1).  Not only has Valeant failed to conduct the required attorney conference prior to making this request of the Court, Valeant has not even made this request to Lilly.   Lilly did provide dates on which requested witnesses would be available for depositions.  (See Lilly's Reply in Support of Motion to Bifurcate, Docket No. 55, p. 11, Attachment #3). The depositions did not take place because Valeant declined to proceed with them.  No further request for depositions has been communicated by Valeant, nor has Valeant requested a 'meet and confer' to discuss depositions of witnesses that have been previously offered up by Lilly for testimony.

The local rules requiring a meet and confer should be enforced, and Valeant's Motion to Compel should be denied for Valeant's failure to comply.

## II.    Lilly Has Acted Reasonably in Responding to Valeant's Discovery Requests.

Discovery opened in this matter upon the conclusion of the initial pre-trial conference on March 31, 2009.  Valeant waited until August 13, 2009, four and a half months after discovery opened, to serve its discovery requests.  Since that time Lilly has attempted to work with Valeant regarding many of the discovery requests and has sought to collect, review, and identify responsive documents - documents that span numerous years, relate to numerous different product liability matters, and exist in the files of numerous custodians.  Lilly has searched through more than a million pages of documents and has been working to identify those that are potentially responsive, and plans to produce its liability-related documents within a few days.  Lilly also will supplement its answers to Interrogatories 1-4 and 7 by December 8.  Lilly has expended these substantial efforts in responding to Valeant's largely irrelevant discovery requests in an effort to facilitate the addressing of Lilly's pending Motion for Partial Summary Judgment.

The parties to this litigation disagree about the interpretation of a contract they entered on February 25, 2004.  The provisions at issue in this case relate to how the parties would allocate costs for present and future product liability claims relating to the use of Permax.  On August 24, 2009, Lilly filed a Motion for Partial Summary Judgment seeking a ruling from the Court regarding the unambiguous meaning of these provisions in the agreement.  (See Docket Nos. 44 and 45).  The Court's ruling on this narrow issue will govern the scope of additional discovery, both as to liability and damages.  Despite the fact that Lilly believes discovery regarding liability issues such as the negotiation of the Letter Agreement and the parties' course of performance is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, Lilly previously has stated it hoped to be in a position to produce documents regarding the liability issues by December 1, 2009.  Lilly is finalizing the review and preparation of documents, and

plans to produce documents responsive to Valeant's Requests Nos. 1-4, 7, 8, 10, and 13 pertaining to liability issues (subject to applicable objections and reasonable procedures described herein) within a few days.  Meanwhile, Lilly already has produced documents responsive to Valeant's Request Nos. 9 and 11.  As described in more detail below, these efforts have been at considerable expense to Lilly as it has attempted to comply with unwieldy discovery requests that are not designed to identify information that is truly relevant to this contractual dispute.

By way of background, in the course of defending product liability claims and prosecuting the present cause, Lilly has collected more than 1.4 million pages of documents relating to Permax.  After learning that Lilly was planning to file a Motion for Partial Summary Judgment regarding the interpretation of the agreement, Valeant tendered onerous discovery requests.  Lilly asserted objections to the overbroad and unduly burdensome requests.  Lilly also filed a Motion to Bifurcate or Stay Certain Discovery until after a ruling on its pending Motion for Partial Summary Judgment.

Notwithstanding its objections and its Motion to Bifurcate, Lilly undertook a good faith strategy for attempting to locate documents responsive to Valeant's discovery requests.  On October 5, 2009, Lilly sent a letter to Valeant explaining the search strings it had run through Lilly's documents in an effort to locate potentially responsive documents, including:

- Name and e-mail address of Tom Packer

- E-mail addresses of other attorneys representing Valeant:  Shannon Ross, Lise Spacapan, Elizabeth Coleman, Elizabeth Fine.

- E-mail addresses of the following attorneys who acted as local counsel for both Valeant[1] and Lilly:  John Woodard, Jennifer Jackson Spencer, Brian Haynes,

---

[1] In reality, not all of these listed attorneys served as local counsel for Valeant; some were local counsel for the prior licensee, Amarin Pharmaceuticals, Inc.

Aimee Fagan, Sam Abate, Joseph Price, William Essig, John Dames, and Scott Sullivan.

- Name and e-mail address of Don Joseph.

- Names and e-mail addresses of Randy Loser, Guy Cipriani, Wes Wheeler, Harry Roosje, Eileen Pruette and Mark G. Johnson

- Terms related to issues identified in this case, including:

  o   Valeant, Amarin or partner

AND
  o   license, licensing, cost(s), claim(s), indemnity, indemnify, liability, liable, settlement, settled, settling, defend, defense, expense(s), fee(s), share, or agreement(s).

Lilly also stated in its October 5, 2009 letter to Valeant that, "We also are running searches of key words from the Letter Agreement and licensing agreements to locate earlier drafts, if any, and searching Lilly's counsel's e-mails for communications with Valeant's counsel. Please advise if there are additional search strings that Valeant proposes to identify additional responsive documents."  Valeant did not respond to Lilly's October 5, 2009 communication regarding search strings, nor to Lilly's offer for Valeant to propose additional search strings to be run to identify additional documents.  Nonetheless, Lilly kept working to identify and prepare documents for production.

Upon further consideration of the search terms and the potentially responsive documents, Lilly identified additional terms to search for, and also discovered that some of the searches generated large groups of documents that were not relevant.  Therefore, Lilly refined the search terms in an effort to more comprehensively, yet efficiently, locate documents potentially responsive to Valeant's discovery requests.  The final search criteria used by Lilly to locate potentially responsive documents ("Search Criteria") are attached as Exhibit C.

Lilly then undertook a document-by-document review of the documents yielded as a result of the Search Criteria to identify those that are actually responsive, and also those that are privileged and thus entitled to protection.  Lilly has acted reasonably in trying to respond to discovery and prepare responsive documents in this case, even in the face of overly broad and unduly burdensome discovery requests.  Notwithstanding the irrelevant nature of many of the documents that Valeant has requested (as discussed in Lilly's Motion to Bifurcate and Lilly's Response to Valeant's Rule 56(f) Motion), Lilly will produce the liability documents so that Valeant can conduct the additional discovery it contends is necessary in order for it to respond to the pending Motion for Partial Summary Judgment.  Nevertheless, Lilly stands by its objections as to the overly broad and unduly burdensome nature of Valeant's various requests, at least until such time as Valeant acknowledges that the Search Criteria and approach that Lilly has undertaken are sufficient to identify potentially responsive documents.

In addition to the searches and review of Lilly's documents described above, Lilly also searched its counsel's emails to locate communications with Valeant's counsel.  Lilly objected to Valeant's requests to the extent they call for disclosure of information that is as readily available to Valeant as to Lilly (including communications exchanged between Lilly and Valeant.)  In its Motion, Valeant takes issue with this objection, insisting that Lilly produce documents even if they were previously in Valeant's possession.  Accordingly, Lilly will produce copies of all of the email correspondence in its counsel's possession that was exchanged with counsel for Valeant for the period beginning February 25, 2004 through March 14, 2008, the date on which Valeant's counsel advised that Valeant interpreted the 2004 Letter Agreement differently than the way the parties' previous course of conduct.  These documents were previously, and perhaps currently are, in the possession of Valeant.  Thus, in accordance with Lilly's objection to

7

producing documents as accessible to Valeant as they are to Lilly, the burden to review them for responsiveness is the same for Valeant as it is for Lilly.  Moreover, Lilly has not had the opportunity to review the e-mails for responsiveness at the time it received Valeant's Motion to Compel (filed without the required attorney conference.)

Notwithstanding Valeant's failure to confer, Lilly also will supplement its answers to Interrogatories No. 1, 2, 3, 4, and 7 by December 8, 2009.  Lilly's objections to Interrogatory No. 6 stand.  Interrogatory No. 6 asks Lilly to "Identify all persons that negotiated any Permax licensing agreements, including the 2002 Agreement and Lilly's agreements with Elan Pharmaceuticals, Inc. and Athena Neurosciences, Inc."  Lilly will identify the persons who negotiated the 2004 Letter Agreement in response to Interrogatory No. 1.  However, Lilly should not be forced to identify persons who negotiated the earlier agreements (executed in 1993, 2001 and 2002, respectively), as the negotiations regarding the earlier agreements did not involve Valeant and have absolutely nothing to do with this litigation.  To the extent the terms from those agreements are relevant in this litigation, those terms speak for themselves.

In addition to the documents that will be produced shortly by Lilly in this case, Lilly previously has produced documents responsive to Valeant's Request No. 11 to Valeant in a product liability case in which Valeant and Lilly are both parties.  Valeant's Request No. 11 asks for "Documents relating to any analysis regarding the potential link between valvular heart disease and Permax, including documents relating to the analysis that culminated in the Dear Health Care Professional letters issued by Lilly on February 10, 2003 and November 1, 2004." (Docket No. 60, Exh. A, p. 5).  On October 19, 2009, Lilly produced to Valeant (through the same counsel that represents Valeant in the present cause) and the other parties in that product liability case a disc containing documents regarding the reported association between valvular

8

heart disease and Permax. (LILLY0286910–0297737, produced in O'Brien/Hagerman). Lilly also produced 3 discs containing a copy of the INDs/NDA[2] for Permax that same day. (LILLY0000001-0286909, produced in O'Brien/Hagerman). These 297,373 pages of document produced by Lilly less than two months ago contain information responsive to Valeant's Request No. 11. A few weeks ago, on November 16, 2009, Lilly produced another disc containing more than 43,000 pages of documents to Valeant (again, through Valeant's present counsel) and the other parties in the product liability case that contains additional information potentially responsive to Valeant's overly broad Request No. 11. (LILLY0297738-0340818). In total, Lilly already has produced to Valeant more than 340,000 pages of documents containing information responsive to Valeant's Request No. 11. Valeant's complaint that it has not received information from Lilly in response to its Request No. 11 is inaccurate.

It is particularly troubling that Valeant has sought to compel the production of these documents that it received from Lilly less than two months ago given that they are not even relevant to any pending claims in this lawsuit. This Request has absolutely nothing to do with the instant lawsuit between Lilly and Valeant. The request for these documents relates only to the product liability lawsuits. The instant case is focused on the interpretation of a provision in a contract for sharing of costs associated with the defense of product liability claims.

Valeant has stated it is entitled to this discovery because "what Lilly knew about Permax is material to whether complete disclosures were made to Valeant at the time the contract was executed or whether there was fraud in the inducement." (Docket No. 54, p. 2). There is a major problem with Valeant's argument – Valeant has not asserted a claim for fraudulent inducement.

---

[2] The Investigational New Drug Application (IND) and New Drug Application (NDA) for Permax (referred collectively as the "INDs/NDA") is comprised of the materials submitted to the FDA regarding Permax. The INDs/NDA were updated regularly with information regarding the safety of the subject drug.

Valeant has had years to evaluate what Lilly knew about the link between valvular heart disease and Permax through the various product liability actions.  Valeant and Lilly have been jointly defending product liability cases involving claims of valvular heart disease from the date of the execution of the Letter Agreement to the present date – a period of over 5 years.  Valeant has embarked on a fishing expedition for an unasserted claim unrelated to the issues in the case

In contrast to the efforts Lilly has made to comply with its discovery obligations, Valeant has done nothing more than forestall the progress of this litigation.  Despite its representation to this Court on October 28, 2009 that it "is prepared to provide an electronic set of responsive documents to Lilly," Valeant has produced no documents in response to Lilly's document requests.  (Docket No. 57, p. 2).  Valeant provided no initial disclosure information regarding its costs in defending the product liability claims, even though it has attempted to reserve the right to include those amounts as potential damages or matter of abatement.  Valeant has rebuffed Lilly's attempts to compromise on discovery disputes and to prioritize the discovery process so as to facilitate a ruling on Lilly's pending Motion for Partial Summary Judgment – all while failing to produce its own documents.

Lilly has diligently worked to advance discovery in this litigation.  Valeant's implication that Lilly has improperly resisted discovery is simply not accurate.

**III.    Lilly Should Not Have to Produce Damages Information at this Stage.**

Lilly and Valeant have briefed extensively the issues of whether Lilly should be required to produce information regarding its damages at this point in the litigation.  Lilly will not undertake to restate its position set forth in Lilly's Motion to Bifurcate, (Docket Nos. 48, 49).  However, Lilly cannot allow one of Valeant's contentions to go unanswered.  Valeant argues that by bringing this action, Lilly has waived any privilege attached to documents responsive to

Valeant's Requests Nos. 5, 6, and 14.  While Lilly eventually may be required to undertake a limited waiver of its privilege by producing invoice and/or other billing information to support its damages if Valeant is found liable, Valeant is not entitled to discover all of Lilly's privileged information regarding the product liability claims.

This case is a contract dispute.  A Motion for Partial Summary Judgment is pending.   It is Lilly's position that the terms of the contract are unambiguous and that the parties obligation to share in the settlement and defense costs of product liability claims arises based on the date notice of the claim is first made.  The cost sharing percentages allocated between Lilly and Valeant change over time.  At the time the agreement was signed, Lilly was responsible for 75% of the settlement and defense costs.  For product liability claims made after January 1, 2009, Lilly is to bear 0% of the responsibility for settlement and defense and defense costs.  As discussed in Lilly's Motion for Partial Summary Judgment, these terms are unambiguous.  There was no dispute between Lilly and Valeant concerning the terms of the contract until the percentage of responsibility shifted to 75% for Valeant and 25% for Lilly.

Valeant's position is that each party bears its own costs for settlement and/or defense based on the facts of each plaintiff's product liability claim and the conduct of Lilly and/or Valeant.  A ruling from the Court on Lilly's Motion for Partial Summary Judgment will instruct what, if any, damages are at issue between Lilly and Valeant.  In the interim, the Court should not permit Valeant to gain access to a substantial asset – the work product developed by Lilly's counsel during more than six years of litigation -  without paying for that asset.

District courts have broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002).  Rule 26(b)(2)(C)(iii) provides that on motion the Court "must limit the frequency or extent of discovery otherwise allowed by these

rules or by local rule if it determines that the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."   The mandatory language of the rule signals the importance of addressing proportional discovery that weighs the cost and burden against the benefit, as well as the 'needs of the case' and the importance of the discovery in 'resolving the issues.'

This rule was the subject of a recent opinion decided in July, 2009 by Judge Magnus-Stinson in *Boimah Flomo, et.al., v. Bridgestone Americas Holding Inc., 2009 U.S. Dist. S.D. Ind. Lexis 63119,* in which the Court denied plaintiffs' expedited motion to compel.  The Court noted that it "must" use its discretion to deny technically proper discovery that is unreasonably cumulative or that would impose oppression or undue burden or expense, citing Fed. R. Civ. P. 26(b)(2)(C).  Judge Magnus-Stinson noted that the Court's discretion "must be influenced by the current posture of this case, with the looming deadline for Plaintiff's summary judgment response both a substantive and procedural priority."  Thus, the Court appropriately gave priority in scheduling discovery that was relevant to the Plaintiff's Rule 56(f) Affidavit.  The Court emphasized that the disputed discovery was not focused on the pending motion for summary judgment, which was the Court's "current priority."   The Court must use its discretion in managing the timing, extent, frequency, and manner of discovery and "deny technically proper discovery that is unreasonably cumulative or that would impose oppression or undue burden or expense.  With respect to [a] particular discovery dispute, the Court's discretion must also be influenced by the current posture of [the] case. . . ."  *Boimah Flomo,* 2009 U.S. Dist. LEXIS 63119, *5-6, 1:06-cv-00627 (S.D. Ind. July 22, 2009).

Likewise, in the instant case, the Motion for Partial Summary Judgment on the issue of liability should remain the priority of the Court and of the parties. As discussed in Lilly's pending Motion to Bifurcate or Stay Certain Discovery (Docket Nos. 48, 49 and 55) Valeant's effort to require Lilly to focus on the expensive, complex and potentially prejudicial process of producing documents related exclusively to damages, in the absence of a ruling from the Court on liability, does not strike the proper balance between the burden or expense of discovery and its likely benefit at this time. While Valeant has not requested global depositions as occurred in *Flomo*, the discussion set forth below is instructive as to the expensive, time consuming, burdensome and complex task that will be required of Lilly if it is required to produce the requested documents. In the absence of a ruling on the Motion for Partial Summary Judgment on the issue of liability, the burden of embarking on this analysis and the potential prejudice to Lilly of being required to produce such documents at this time outweighs its benefit. The requested damages discovery has no probative value on the liability issues addressed in Valeant's 56(f) motion or in Lilly's Motion for Partial Summary Judgment.

**A.    Delaware Law Applies to Claims of Attorney-Client Privilege, and Federal Law Applies to Claims Regarding the Work Product Doctrine.**

If damages discovery proceeds at this time, as a threshold matter, the Court must determine what law to apply to these issues. Federal courts presiding over a diversity action look to state law, not federal law, in determining the existence and scope of the attorney-client privilege. *Bartlett v. State Farm Mut. Auto. Ins.*, 206 F.R.D. 623, 626 (S.D.Ind. 2002). The 2002 Amended and Restated License and Supply Agreement, which was incorporated into the 2004 Letter Agreement, states, "This Agreement shall be construed and the rights of the parties determined in accordance with the substantive laws of the State of Delaware…." (Docket No.

44, Attachment #3, p. 42).  Thus, Delaware law applies to issues relating to Lilly's assertion of the attorney-client privilege.

The work product doctrine originates from Federal Rule of Civil Procedure 26(b)(3). F.R.C.P. 26(b)(3) contains no requirement that federal courts in diversity suits apply the privilege of the law where the court sits.  Thus, "the work-product doctrine is governed by a uniform federal standard even in diversity cases."  *Dawson v. New York Life Ins. Co.*, 901 F.Supp. 1362, 1367 (N.D.Ill. 1995); *see also, Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.,* 460 F. Supp. 2d 915, 917 (S.D. Ind. 2006).

**B.      The Production of Billing Information Is Premature.**

Despite the absence of an attorney conference as required by Local Rule 37.1, Valeant seeks an order compelling Lilly to produce documents responsive to Request Nos. 5 and 6 which request the production of invoices detailing legal fees and costs for the product liability claims and proof Lilly paid these invoices (collectively "Billing Information").  Lilly provided in its initial disclosures documentation evidencing both settlement and defense costs paid by Lilly in the product liability actions.  Lilly acknowledges that, if it is determined that Valeant is liable to Lilly, then Lilly may need to produce additional information regarding costs it has paid in order to prove its damages.  However, producing this information at this point of the litigation is not necessary and would be potentially prejudicial, as discussed in Lilly's Motion to Bifurcate (Docket Nos. 48, 49, and 55).

Valeant's own conduct shows it agrees with Lilly's position.  Indeed, Valeant purported to reserve its right to recover its own defense costs in the product liability actions.  Indeed, the unambiguous contract provisions would require that both Lilly's and Valeant's costs would need to be included in order to arrive at a damages calculation.  Yet, despite taking this position,

14

Valeant has refused to supplement its Initial Disclosures to identify and make available documents supporting its defense costs.  What is good for the goose is good for the gander. Valeant should not be permitted to assert that all of Lilly's underlying work product documents and attorney client privileged documents should be produced now, before a ruling regarding liability is rendered, while at the same time refusing to provide any information at all concerning its costs, (even in the form of a number or an amount for the applicable years).  Valeant's position is that under the rules for initial disclosure it is not required to provide its information concerning costs, which is equivalent to what has already been disclosed by Lilly, erstwhile refusing to waive its right to recover such costs in connection with its claims in this lawsuit.

Valeant acknowledges the Billing Information is privileged information.  However, Valeant argues Lilly has waived the privilege by seeking reimbursement for its legal costs. Waiver of privilege has been found when a party attempts to use privilege as a litigation weapon. *See Citadel Holding Corporation v. Roven*, 603 A.2d 818, 825 (Del. 1992).  This is not what is happening here.  Lilly is not hiding behind its privilege, as the liability issues in the present cause have nothing to do with Lilly's Billing Information.  The Billing Information goes to the amount of Lilly's damages, not to whether Valeant is liable to Lilly.  As requested in Lilly's Motion to Bifurcate, Lilly seeks a stay of damages discovery until thirty (30) days after a ruling on the Motion for Partial Summary Judgment.  Thus, Lilly will produce additional damages information if it is determined that the meaning of the Letter Agreement is as Lilly has set forth in its Motion for Partial Summary Judgment.  This will afford Valeant the opportunity to evaluate the damages claimed by Lilly.  However, as set forth in detail in Lilly's Motion to Motion to Bifurcate,  Lilly should not be forced to undertake this limited waiver of its privilege at this point in the litigation.

**IV.** **Valeant Is Not Entitled to Discover Lilly's Attorney-Client Communications and Work Product.**

Valeant seeks to obtain Lilly's work product without paying for it. It is Valeant's position that the agreement does not require Valeant and Lilly to share in defense costs – period. In their bid to contest the interpretation of the contract, Valeant is requesting broad discovery that will give them complete access to all of the work product generated on behalf of Lilly, and paid for by Lilly, in the defense of all product liability claims, while refusing to acknowledge any obligation to pay for it now or in the future. If the Court determines that the parties are required under the agreement to share costs, then the scope of discovery relating to costs and the burdens associated with its production should be addressed. If the Court determines that the parties are not required to share costs, then neither Lilly nor Valeant should be required to reveal their attorney client communications or work product protected documents and/or expend the substantial resources necessary to produce the data pertaining to costs.

Valeant and its counsel are, and have been, involved in the product liability claims in which the costs at issue have been incurred. Valeant consented in advance to each of the settlements reached, participated in strategy decisions for defending the cases along the way, and even had an opportunity to observe the process for preparation of the INDs/NDA for production. Valeant does not need, and should not be allowed, to delve into Lilly's entire universe of work product and attorney-client communications on the pretense of evaluating the reasonableness of Lilly's costs. Lilly has generated significant work product while defending the product liability claims. Moreover, this work product is germane to ongoing litigation and future litigation. Principles of fairness and consistency (invoked in the *Pamida, Inc. v. E.S. Oridingals, Inc.,* 281 F.3d 726, 729 (8th Cir. 2002) decision, which has been relied upon by Valeant and is discussed,

16

*infra*) mandate that Valeant's attempts to circumvent and frustrate the contractual terms through its discovery requests be denied.

Valeant allegedly seeks documents protected by attorney-client privilege and the work product doctrine (documents requested in Valeant's Request Nos. 5, 6 and 14) so it can assess the reasonableness of Lilly's attorneys' fees and of the settlements entered in the product liability actions. However, courts have determined that the production of such information is not relevant to determine the reasonableness of attorneys' fees a party is seeking to recover from its adversary. Moreover, the facts in this case are unique in that Valeant has been involved throughout the defense of the product liability actions and has consented to every settlement entered in the cases at issue. Thus, Lilly's privilege should not be extinguished in favor of producing this information.

The procedures implemented by the Seventh Circuit to determine the reasonableness of attorneys' fees do not call for the analysis of each billing entry, nor the attorneys' entire file. In this regard, the Seventh Circuit has outlined a system for quantifying reasonable attorneys' fees pursuant to the contractual provision at issue. *Oldenburg Group Inc. v. Frontier-Kemper Constructors, Inc.*, 597 F.Supp.2d 842, 847 (E.D.Wis. 2009). The court is to focus on the provisions in the parties' agreement, such as: "did the legal expenses result from [the] breach and, if so, were the fees reasonable (that is, were they fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves)?" *Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 200 F.3d 518, 521 (7th Cir.1999). Under this approach, a district court will not normally engage in a detailed, hour-by-hour review of the attorneys' bills. *See Oldenburg Group*, 597 F.Supp.2d at 847. Courts award fees at the market rate, because the best evidence of the market value of legal services is what people pay for it. *Balcor Real Estate*

*Holdings, Inc. v. Walentas-Phoenix Corp.,* 73 F.3d 150, 153 (7th Cir.1996).  Thus, so long as the

attorneys' fees are real fees that the party seeking reimbursement actually paid in the ordinary

course of business, a court should find that the bills are commercially reasonable. *Oldenburg*

*Group*, 597 F.Supp.2d at 847; *see also Medcom,* 200 F.3d at 520-21.  It is clear this system

utilized by the Seventh Circuit does not include evaluating the entire body of the attorneys' work

product in order to determine the reasonableness of the fees, nor are the attorneys' fees subject to

a task by task analysis.  Such an undertaking would overwhelm our courts, especially in a case

like this in which the costs at issue span many years and multiple matters.  Instead, the Court

should  consider that the costs were actually paid by Lilly as they were incurred, and that Valeant

was kept informed and was involved every step of the way.

Outside the Seventh Circuit, numerous courts have addressed situations relevant to the

Lilly-Valeant dispute.  In *Ex parte State Farm Fire and Casualty Company*, 794 So.2d 368 (Ala.

2001), the Alabama Supreme Court considered a case in which plaintiffs sought defense and

indemnity from its insurer for a lawsuit filed against them.  *Id.* at 369-370.  Insurer denied

coverage and, after its dismissal from the lawsuit, plaintiffs filed suit against insurer seeking their

attorney fees and costs incurred in the underlying lawsuit.  *Id.* at 370.  Insurer served a subpoena

*duces tecum* on plaintiffs' attorneys seeking the attorneys' entire files related to the underlying

lawsuit.  *Id.*

The Alabama Supreme Court upheld a trial court ruling refusing to compel the

production of these documents.  *Id.* at 377.  Insurer argued it needed the requested documents in

order to, among other things, address the issues of why plaintiffs retained separate counsel,

whether the retention of two separate attorneys led to unnecessary duplication of effort, and why

the attorneys had made no effort to collect the fees from the plaintiffs.  *Id.* at 371.  The Court

rejected these arguments, holding that "the mere fact [plaintiffs] have claimed damages to compensate for the attorney fees they incurred in the earlier action does not indicate a waiver of the attorney-client privilege." *Id.* at 376. The Court allowed the insurer to discover billing statements and other billing-related documents, "redacted where necessary to protect substantive content." *Id.* The Court explained how the insurer can examine the reasonableness of the attorneys' fees:

> The reasonableness of the attorney fees can be determined independently by use of expert testimony, without disclosure of the documents relating to the actual advice given by the attorneys to [Plaintiff]. Competent attorneys can examine the pleadings, discovery materials, and nonprivileged communications and review the invoices and from that examination form an opinion as to the number of hours that should have been expended on the case and the number of attorneys who would have had to work on it, and then render an opinion as to the reasonableness of the fees charged.

*Id.* But the Court was emphatic that "the substantive content of the attorneys' files related to the earlier action is not essential to proof of [plaintiffs'] damages claim in their breach-of-contract and bad-faith action." *Id.*

Cases in numerous other jurisdictions have set forth similar guidelines. *See, e.g. Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693, 15 -16 (S.D.N.Y. 2002) ("The Court does not accept, however, that merely asserting a claim for indemnification of defense costs should vitiate the attorney-client privilege with respect to all aspects of a client's defense."); *Remington Arms Company v. Liberty Mutual Insurance Company*, 142 F.R.D. 408, 414 (D.Delaware 1992) (applying Connecticut law) ("By claiming that its attorney's fees or actions in the underlying litigation were reasonable, [plaintiff] does not forfeit its protection of the privileged documents…"); *Mortgage Guarantee & Title Co. v. Cunha*, 745 A.2d 156, 160 (R.I. 2000) ("the mere fact that plaintiff made a claim for attorneys' fees as part of the claim for

damages does not indicate a waiver of the attorney-client privilege."); *Deutsche Bank Trust Co. of Americas v. Tri-Links Inv. Trust*, 43 A.D.3d 56, 57, 837 N.Y.S.2d 15, 18 (N.Y.App.Div. 2007) ("A party suing to enforce an alleged right to indemnification for the costs of defending and settling a prior lawsuit does not thereby, without more, place at issue the party's privileged communications with counsel concerning the prior lawsuit and settlement."); *Citadel Holding Corporation v. Roven*, 603 A.2d 818 (Del. 1992) ("Any discovery here authorized should be limited to the quantum of the expenditure, including a specification of work performed.  The mental processes or other work product of the attorney who billed the time is not subject to disclosure.")

The cases cited by Valeant in support of its arguments are distinguishable from the facts at issue here.  In *Abbott Laboratories v. Alpha Therapeutic Corporation*, Abbott sold blood product assets to Alpha.  200 F.R.D. 401, 403 (N.D. Ill. 2001).  In the agreement Abbot agreed to indemnify Alpha for all claims related to any inventory Abbott provided Alpha before August 15, 1978 "or obtained directly or indirectly by Alpha but owned by Abbott prior to the closing of the contract," but it also provided Abbott would not be forced to indemnify Alpha for claims that had their origin in Alpha's own negligence.  *Id.*  Additionally, the agreement contained a cooperation clause obligating Alpha to make available to Abbott all records related to any suit underlying a claim for indemnification from Abbott.  *Id.*  On Abbott's motion to compel all documents related to the underlying claims, the Court found that Alpha contractually agreed to produce the documents plaintiff requested.  *Id.* at 410.  Additionally, the Court found "the issues surrounding the conduct of the underlying litigation are central to the question of whether Abbott should be forced pursuant to its contract obligations to indemnify Alpha."  *Id.* at 411.  Thus, the Court ordered Alpha to produce all documents related to the underlying claims.

This situation here is completely different.  In the contract Lilly did not agree to provide its privileged communications to Valeant.  Moreover, Lilly's privileged communications are not central to the question of whether Valeant is obligated to reimburse Lilly for a portion of the defense costs.  The cost allocation formula in the Letter Agreement is straightforward and is based solely on the date that written notice of an intent to assert a claim is first received.  It is nothing like the complex system set forth in the agreement between Abbott and Alpha, where indemnity depended on a complicated factual determination.

Valeant also argues that *Abbott* stands for the proposition that the work product is the only way to assess if settlement costs were reasonable.  But, yet again, the facts of this case are distinguishable from *Abbott*.  Valeant was involved in every product liability case at issue prior to its settlement or other resolution, and it participated in strategy decisions.  Moreover, until the O Claim,[3] Valeant paid its share of each settlement entered in the product liability actions in accordance with the schedule in section 10.3 of the Letter Agreement.  (Docket No. 44, Ex. 1. at ¶¶s 13-15, 17-20, 22).  Even with respect to the O Claim, Valeant was informed of the settlement amount in advance, said it had no objection thereto, and attended the mediation during which the O Claim was settled.  (*Id.* at ¶¶s 17-20).

The other cases cited by Valeant are also distinguishable.  In *Pamida, Inc. v. E.S. Oridingals, Inc.*, *Ideal Electronic Security Co., Inc. v. International Fidelity Insurance Company* and *Equitable Production Company v. Elk Run Coal Company* the documents at issue were billing statements, not the entire body of attorney work product and communications.  *See* 281 F.3d 726, 729 (8th Cir. 2002); 129 F.3d 143, 151 (D.C.Cir. 1997); 2008 WL 5263735, *1-*6

---

[3] As discussed in Lilly's Brief in Support of Motion for Partial Summary Judgment, the term "O Claim" refers to a product liability claim that was asserted against Lilly and others and which was settled pursuant to a settlement agreement containing a confidentiality clause that prohibits Lilly from identifying the case or its parties by name.  (Docket No. 45, p. 7, n. 4).

(S.D.W.Va. 2008).  The court in *Pamida* also discussed the interest of not disclosing attorneys' litigation strategy, but concluded that interest was not at issue there as the attorney's invoices being sought related to a patent infringement action that had been concluded, and the requested information was uniquely known by Pamida's attorneys.  *Pamida*, 281 F.3d at 730-731.  In both *Ideal Electronic* and *Equitable Production*, the party resisting the discovery of unredacted invoices already had produced portions of the invoices at issue, indicating the party intended to rely on those invoices to prove damages.  *Ideal Electronic Security Co., Inc*., 129 F.3d at 151; *Equitable Production*, 2008 WL at *4.  As observed by the Court in *Pamida*, when analyzing issues of implied waiver, the Court must look not only at whether there was an intentional waiver of the privilege, but also whether the interests of fairness and consistency mandate a finding of waiver.  *Pamida*, 281 F.3d at 732.

    To the extent Lilly eventually is required to produce its Billing Information, then it should be permitted to redact the substantive content contained therein.  As explained *supra*, in the *State Farm* case the Alabama Supreme Court allowed the insurer to discover billing statements and other billing-related documents but stated these documents could be "redacted where necessary to protect substantive content."  794 So.2d at 376.  This is consistent with the Delaware Supreme Court's holding in *Citadel*, where it ordered production of billing information but stated the discovery was limited to the quantum of the expenditure, including a specification of the work performed, but excluded discovery of the mental processes and other work product of the attorneys.  603 A.2d at 825.  Thus, if substantive content such as the mental processes or other work product of Lilly's attorneys appear in the Billing Information, Lilly should be permitted to redact this work product in order to protect its privilege.

**Conclusion**

Valeant's Motion seeks an order compelling Lilly to produce documents responsive to its Requests for Production Nos. 1-8, 10, 11 and 13-14 and its Interrogatories Nos. 1-4 and 6-7. Valeant did not comply with local rules requiring a meet and confer as to all issues raised in their motion.  For that reason alone, Valeant's Motion to Compel should be denied.

In addition to failing to follow local rules of procedure, Valeant's Motion to Compel also fails substantively.  To summarize, Lilly is producing shortly or already has produced, subject to its objections and Search Criteria, documents responsive to Valeant's Requests Nos. 1 – 4, 7 - 11, and 13.  As requested in Lilly's Motion to Bifurcate, Lilly requests that it be allowed thirty days after the Court's ruling on the Motion for Partial Summary Judgment in which to respond or further object to Valeant's requests for production regarding damages  (Requests Nos. 5 and 6). Lilly's objections to Request Nos. 5 and 6 stand.  Similarly, Lilly stands on its objections to Valeant's Request No. 14, which improperly attempts to intrude on Lilly's attorney-client privilege and work product protection for information irrelevant to either the liability or damages issues in this litigation.  Lilly will supplement its answers to Interrogatories Nos. 1-4 and 7 by December 8, and stands on its objections to Interrogatory No. 6, as it seeks information regarding irrelevant negotiations.

Finally, many of the issues raised by Valeant's Motion are or will be moot by virtue of the Court's ruling on other pending motions and Lilly's production of documents.  Valeant knew, or would have known, this before filing its Motion if it had met its obligation to confer with Lilly in advance.  For the foregoing reasons, the Motion to Compel filed by Valeant (who has yet to produce a single document in this lawsuit or any information whatsoever concerning its costs) should be denied in its entirety.

WHEREFORE, Eli Lilly and Company, by counsel, respectfully requests the Court deny Valeant's Motion to Compel and all other relief just and proper in the premises.

Respectfully Submitted,

ICE MILLER LLP

*/s/  Rebecca J. Seamands*
Mary Nold Larimore
Rebecca J. Seamands
Kimberly C. Metzger
One American Square, Suite 2900
Indianapolis, Indiana 46282-0200
(317) 236-2100
*Attorneys for Plaintiff Eli Lilly and Co.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2009, a copy of the foregoing Response in Opposition to Valeant's Motion to Compel was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> Elizabeth Abbne Coleman
> JENNER & BLOCK, LLP
> ecoleman@jenner.com
>
> Larry Gene Evans
> HOEPPNER WAGNER & EVANS LLP
> levans@hwelaw.com
>
> F. Joseph Jaskowiak
> HOEPPNER WAGNER & EVANS LLP
> jjaskowiak@hwelaw.com
>
> Lise T. Spacapan
> JENNER & BLOCK, LLP
> lspacapan@jenner.com
>
> Casey T. Grabenstein
> JENNER & BLOCK, LLP
> cgrabenstein@jenner.com

/s/  *Rebecca J. Seamands*
Rebecca J. Seamands

I/2410107.1