IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ELI LILLY AND COMPANY, an Indiana Corporation, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, a Delaware Corporation, | ) ) ) | Case No. 1:08-cv-1720-SEB-TAB |
| Defendant/Counterclaim-Plaintiff, | ) ) ) | |
| ELI LILLY AND COMPANY, | ) ) | |
| Counterclaim-Defendant. | ) | |

## ELI LILLY AND COMPANY'S RESPONSE TO VALEANT PHARMACEUTICAL INTERNATIONAL'S RENEWED MOTION TO COMPEL

Valeant Pharmaceuticals International's ("Valeant") Renewed Motion to Compel should be denied for the following reasons: (1) Lilly is preparing to produce documents in response to Request Nos. 5 and 6 in accordance with the Court's scheduling order; (2) Request No. 11 asks for documents that are unrelated to any claim or defense that has been asserted in this case; and (3) Request No. 14 seeks Lilly's attorney-client communications and work product materials – a request that is not warranted given the applicable law, issues and facts of this case. Valeant has failed to meet and confer with Lilly regarding these issues. Lilly has complied with all discovery orders, producing more than 20,900 pages of documents in response to Valeant's requests regarding liability issues.

For its part, Valeant has resisted discovery directed to it, even indicating in its motion it will not provide the same discovery it has sought from Lilly. Valeant's Renewed Motion to Compel ("Renewed Motion") is a thinly-veiled attempt to delay depositions and thus delay a

1

ruling on Lilly's Motion for Partial Summary Judgment, and to obtain for free that for which it is obligated to pay per the parties' agreement.  Valeant's Renewed Motion should be denied in its entirety.

I.    **Valeant's So-called "Renewed" Motion Raises Issues Not Previously Asserted in Its First Motion to Compel, and That Have Never Been the Subject of an Attorney Conference Pursuant to Local Rule 37.1.**

Valeant failed to comply with Local Rule 37.1 which requires counsel to submit a separate statement with its motion to compel showing the reasonable efforts made to try and reach agreement with opposing counsel on the matters set forth in the motion.  No such separate statement accompanied Valeant's Renewed Motion, and thus its motion should be denied.  *See Stelor Productions, LLC v. Oogles N Googles et al.*, 2008 WL 5062786, *4 (S.D. Ind. 2008) (denying motion for protective order for failure to comply with Local Rule 37.1).

Valeant states that the issues presented in its Renewed Motion have been discussed in several motion papers, orders, and meet and confer conferences.  (Dkt. 67, p. 2).  Motion papers and Orders do not satisfy the meet and confer requirements of Local Rule 37.1.  Additionally, as described below, the issues raised in Valeant's Renewed Motion are not the same as those presented in its prior motion to compel filed on November 16, 2009 (Dkt. 60), which also was filed without the prerequisite attorney conference statement.  (*See* Dkt. 62, pp. 2-3).  Thus, Valeant cannot seek to cure the lack of an attorney conference here by relying on a conference predating its First Motion to Compel.

Specifically with respect to Valeant's Requests Nos. 5 and 6, which relate to damages, Valeant's First Motion to Compel requested an Order that Lilly be required to produce responsive documents rather than be permitted to wait to produce them after the Court's ruling on Lilly's Motion for Partial Summary Judgment as proposed by Lilly in its Motion to Bifurcate

and/or Stay Certain Discovery.  (Dkt. 60, p. 14).   On December 4, 2009, the Court denied Lilly's Motion to Bifurcate, and also entered an Order Amending Case Management Plan providing that the deadline for outstanding discovery is February 4, 2010.  (Dkt. 63 and 64).  On December 15, 2009, Lilly advised Valeant that it was preparing documents responsive to Valeant's Request Nos. 5 and 6 per the Court's Orders, and proposed that the parties agree to a mutual exchange of their respective invoice information on February 1, 2010, which would permit the parties time to conduct any follow-up discovery by the April 4, 2010 deadline.  (*See* Dkt. 67, Ex. C).  Rather than respond with a counter-proposal, or at least request an attorney conference as required by the rules, Valeant retorted that it rejected Lilly's proposal and threatened to file a renewed motion to compel.  (*See* Dkt. 68, Ex. 2 at pp. 2, 4).  When Lilly sought clarification as to the subject matter of the threatened renewed motion to compel, and offered dates for a meet and confer as required by the rules, Valeant rebuffed Lilly's overtures.  Valeant responded vaguely that the parties had "conferred on a great many disputes" and indicated that "if [Valeant] find[s] new matters, [it] certainly will advise [Lilly]."  (Dkt. 68, Ex. 2, p. 1.).

Later on December 18, 2009, Lilly received further correspondence from Valeant identifying for the first time its complaints that are the subject of its Renewed Motion.  (Dkt. 67, Ex. A).  Again, Valeant indicated no intention of conducting a meet and confer.  (*Id.*)  Lilly's response highlighted again the meet and confer requirement.  (Exhibit 1, attached.)  Valeant continued to ignore the meet and confer requirement, and no meet and confer occurred prior to Valeant filing its Renewed Motion.

With respect to Valeant's Request No. 11, which requested documents relating to any analysis of a potential link between valvular heart disease and Permax, Valeant's First Motion to Compel complained that Lilly had not produced responsive documents.  (Dkt. 60, pp. 7-12).

Now, in its "Renewed Motion" Valeant complains that Lilly's December 7, 2009 production was not sufficiently narrow to allow Valeant to identify more readily the relevant documents and that it was improper for Lilly to direct Valeant to documents recently produced by Lilly to Valeant in two underlying product liability cases.  (Dkt. 60, p. 10).  Lilly's response to Valeant's flawed arguments regarding Request No. 11 is set forth in section III below.  But as a threshold matter, Valeant not only did not conduct an attorney conference prior to filing its Renewed Motion regarding this request as required by the rules, it also did not respond to Lilly's December 22, 2009 offer to address what may have been part of Valeant's concerns by making copies of the documents available again in this litigation, at Valeant's expense.  (*See* Dkt. 67, Ex. B).  Valeant's response to Lilly's proposal was to file its Renewed Motion.

Valeant's Request No. 14 effectively seeks all of Lilly's attorney-client communications and work product related to the product liability claims.  Valeant withdrew its First Motion to Compel relating to this request following the Court's December 4 Order on the Motion to Bifurcate.  (Dkt. 65).  To avoid any misunderstanding, Lilly notified Valeant that Lilly did not believe the Court's December 4 Order had addressed Lilly's objections to Valeant's Request No. 14, which in fact it had not, and asked Valeant to clarify its position regarding its Request No. 14.  (Dkt. 67, Ex. C).  In subsequent correspondence, Lilly explained to Valeant that Lilly understood the Court's December 4 Order regarding bifurcation and the Rule 56(f) motion was a ruling as to the timing of discovery, and was not an order compelling Lilly to produce documents responsive to Request No. 14.  (Dkt. 68, Ex. 2, p. 2).  The Court did not reach the dispute regarding Request No. 14 before Valeant withdrew its First Motion to Compel.  As with the other requests and issues in dispute, Valeant rebuffed Lilly's inquiries regarding an attorney

4

conference as required by the rules regarding this discovery request and the Court's December 4 Order.  (*Id.*)

Valeant has consistently refused to participate in attorney conferences with Lilly which may allow the parties to clarify, address, narrow and/or potentially compromise on discovery disputes.  Valeant even acknowledges that one of the "disputes" it raised in its Renewed Motion may in fact be "just a misunderstanding."  (Dkt. 67, p. 11).  If so, then it should have been dealt with in an attorney conference.  Valeant's admission only highlights its disregard of the rules.

The local rules requiring a meet and confer (which have been brought to Valeant's attention on numerous occasions during this litigation) should be enforced, and Valeant's Renewed Motion to Compel should be denied for Valeant's failure to comply.

## II.   Lilly Is Preparing Documents Responsive to Valeant's Requests Nos. 5 and 6 in Accordance with the Court's Order Amending Case Management Plan.

The Court's December 4 Order Amending Case Management Plan provided that the deadline for outstanding discovery is February 4, 2010.  (Dkt. 63).  After receiving the Court's Order denying Lilly's Motion to Bifurcate and the Order Amending the Case Management Plan, Lilly advised Valeant that it was preparing documents responsive to Requests Nos. 5 and 6 (which relate to damages issues) and would produce them in accordance with the timing established by the Court.  (Dkt. 67, Ex. C).  Valeant's Renewed Motion seeks an order compelling Lilly to produce damages documents prior to the deadline established by the Court.

The Case Management Plan in this case has always contemplated that liability discovery would be completed prior to the completion of damages discovery.  Lilly has focused its efforts on producing documents responsive to the liability issues, and now must turn its attention to completing depositions regarding liability by the liability discovery deadline. The Court's Order Amending Case Management Plan provides the parties time after the close of liability discovery

in which to conduct damages discovery.  Lilly is working to conduct discovery in the staged manner set forth in the Court's Orders.

Valeant asserts that damages documents are intertwined with documents relating to the parties' course of performance.  In reality, until December 29, 2009, there was only one witness whose deposition had been requested by Valeant who had been involved in the product liability claims and thus would have any information regarding the damages documents.  As noted in Lilly's Objection to Valeant's Request for Expedited Briefing, if Valeant had raised its concerns regarding this witness prior to filing its Renewed Motion, the parties could have discussed keeping that one witness's deposition open for purposes of addressing any later-produced documents on the issue of damages only.  (Dkt. 68, p. 4).

The day after Lilly raised this alternative in its Objection to Valeant's Request for Expedited Briefing, Valeant sent Lilly correspondence stating for the first time that it wanted to take the depositions of two of Lilly's counsel of record,  Mary Larimore and Rebecca Seamands. (*See* Exhibit 2, attached).  The timing of Valeant's request is remarkable, and issues relating to the depositions of the respective counsel of record[1] will need to be resolved, likely with the guidance of the Court.  Meanwhile, Valeant's December 29, 2009 request for the depositions of Lilly's counsel of record cannot form a basis in support of Valeant's December 23, 2009 Renewed Motion to Compel.

---

[1] To the extent deposition testimony from counsel for Lilly is probative and permitted, so too would be deposition testimony of Valeant's counsel Lise Spacapan and Elizabeth Coleman, as they have been involved in the defense of the product liability claims under the Letter Agreement since approximately March of 2007.

III.     **Valeant Seeks an Order to Compel Regarding Its Request No. 11, Even Though Valeant Has Received More Than 340,000 Pages of Documents Containing Responsive Information and Previously Refused to Work with Lilly to Narrow its Request.**

   A.     **Valeant Seeks an Order to Compel That Differs From the Document Request Valeant Tendered to Lilly.**

As a preliminary matter, Valeant's Renewed Motion seeks an order compelling discovery from Lilly that differs materially from the actual discovery request it tendered.  Valeant seeks an order compelling "Lilly to produce documents relating to any information provided to, or withheld from, Valeant prior to the execution of the Letter Agreement *regarding the health risks associated with Permax*."  (Dkt. 67, p. 12) (emphasis added).  However, Valeant's Request No. 11 sought, "Documents relating to[2] any analysis regarding the potential link *between valvular heart disease and Permax*, including documents relating to the analysis that culminated in the Dear Health Care Professional letters issued by Lilly on February 10, 2003 and November 1, 2004."[3]  (Dkt. 60, Ex. A) (emphasis added).  "Health risks," is much  broader than "the potential link between valvular heart disease and Permax" that was included in Request No. 11.  Valeant cannot obtain an order to compel on a discovery request it has never tendered.

---

[2] The overly broad nature of the discovery request is exacerbated by Valeant's definition of "relating to": "Relating to shall mean concerning, consisting of, referring to, reflecting, regarding, supporting, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the subject matter discussed."  (Dkt. 60, Ex. A, p. 3).

[3] On its face, Request No. 11 seeks documents generated more than eight months *after* the execution of the February 25, 2004 Letter Agreement at issue in this case ("Letter Agreement", *see* Dkt. 44, Attachment #7), underscoring the lack of relevance even as to Valeant's fishing expedition for a fraud-in-the-inducement claim.

**B.      Valeant's Request No. 11 Seeks Information Regarding an Issue on Which It Is Not Entitled to Conduct Discovery Because It Admittedly Is an Attempt for Valeant to Explore Whether an Unasserted Claim or Defense Might Exist.**

Even if such a request along the lines Valeant seeks in its Renewed Motion had been tendered to Lilly, the fact remains that it, like Valeant's Request No. 11, seeks information irrelevant to any claim or defense in this lawsuit.  The Federal Rule of Civil Procedure 26(b)(1) provides in relevant part that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…."

The comments to the 2000 amendments to FRCP 26(b)(1) state:

> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.

The federal district court in the Northern District of Illinois cited these comments and observed, "The 2000 Amendment explicitly limited the scope of discovery to the 'claim or defense of any party' identified in the pleadings without leave of court." *American Roller Co., LLC v. Foster-Adams Leasing, LLP,*  2006 WL 1371441, *3 (N.D.Ill. 2006); *see also McCurdy v. Wedgewood Capital Management Co., Inc*., 1998 WL 964185, *11 (E.D.Pa. 1998) ("This court finds that disclosing information relevant only to a prospective claim exceeds the scope of the subject matter of the present action. A complaint is not 'a hunting license to discover whether, in fact, a viable claim may be alleged ... The discovery rules are designed to support a properly pleaded cause of action and to prepare defenses to charges made - not to discover whether a claim exists.' [internal citations omitted].  Consequently, Plaintiff is not entitled to discovery merely to determine whether or not additional, unasserted claims might exist.")

8

This is a case in which the parties have asserted claims regarding the cost-sharing provisions in the contract between them. Valeant repeatedly has acknowledged that its Request No. 11 is designed to allow it to determine whether it has a fraud-in-the-inducement claim or defense. Valeant has not pleaded fraud in the inducement (either as a claim or defense), nor is there evidence to support such a claim or defense. Valeant's assertion that "Request No. 11 relates to a central issue in this lawsuit" is patently false. (Dkt. 67, p. 9).

Valeant asserts that, "the parties included disclosures regarding Permax product liability claims in the February 25, 2004 Letter Agreement which is the subject of this indemnity lawsuit." (Dkt. 67, p. 9). In fact, the only such disclosure by Lilly in the Letter Agreement related to the number of product liability claims in existence as of the date of the Letter Agreement of which Lilly had knowledge. (Dkt. 44, Attachment #7, section 10.4). Valeant tendered an interrogatory asking that Lilly identify the claims or potential claims relating to Permax that Lilly was aware of prior to the execution of the Letter Agreement. (Dkt. 60, Ex. B). In its Supplemental Answer to Interrogatories served on December 8, 2009, Lilly identified the Product Liability Claims in existence of which it was aware prior to the date of execution of the Letter Agreement. Valeant and its counsel were involved with the product liability claims that were pending when the Letter Agreement was finalized, and with the product liability claims that have followed over the next almost six years. The entire Investigational New Drug Application and New Drug Application, along with the Annual Updates filed each year with the FDA ("INDs/NDA files") for Permax were transferred to Valeant in July 2005 and thus have been in Valeant's possession for more than five years. Valeant has had more than enough information for it to have long ago assessed any alleged misrepresentation in the Letter Agreement.

**C.    Lilly Already Has Produced Documents to Valeant That Contain Information  Responsive to Valeant's Overly Broad Request No. 11, Which Valeant Previously Refused to Narrow.**

Notwithstanding the irrelevance of Valeant's Request No. 11, in an attempt to avoid a dispute over this non-issue, Lilly provided the requested information in response to the Interrogatory tendered by Valeant on the subject, and indicated in its response to Request No. 11 that it would produce responsive documents, notwithstanding the overly broad, burdensome, and ultimately irrelevant nature of the Request.  And Lilly has done just that.

It is not an overstatement to describe Request No. 11 (particularly in light of the definition of "relating to" that Valeant ascribes) as potentially encompassing virtually any document that pertains to the liability issues in the underlying Permax product liability lawsuits alleging valvular heart disease.  Valeant refused to work with Lilly to narrow its request and moved to compel Lilly to produce all responsive documents.  (*See* Dkt. 68, Ex. 1;  Dkt. 60).

Lilly had recently produced thousands of pages of such documents in connection with two underlying product liability cases in which plaintiffs have alleged valvular heart disease as a result of ingesting Permax.  (*O'Brien v. Eli Lilly and Company, Valeant Pharmaceuticals International*, *et al*., pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, State of Florida, Case No. 08-47717 CA 13; *Hagerman v. Eli Lilly and Company, Valeant Pharmaceuticals International, et al*, pending in the United States District Court for the District of Colorado, Civil Action No. 1:09-cv-00672-REB-BNB; hereinafter collectively referred to as "*O'Brien/Hagerman*").  As a party to the *O'Brien/Hagerman* cases, Valeant, through the same counsel that represents it in the *Lilly v. Valeant* lawsuit, received copies of the documents produced by Lilly. On October 19, 2009, in its initial production in *O'Brien/Hagerman*, Lilly produced three DVDs containing the Permax INDs/NDA files (a total

of 286,909 pages), and a CD-ROM of other documents that had been specifically identified as being relevant to valvular heart disease issues (totaling another 10,000 pages). In a second production sent to Valeant and the other parties on November 18, 2009, Lilly produced another DVD containing documents totaling an additional approximately 43,000 pages responsive to searches designed to capture documents relating to valvular heart disease.

These documents are in an electronic format that is searchable. Thus, even though Valeant's counsel declined to work with Lilly to narrow its Request No. 11, Valeant is able to search Lilly's production to identify within the *O'Brien/Hagerman* documents those that it thinks are the most pertinent to the issues in this case -- for example, by looking for documents created within a particular date range or containing particular words or phrases.

Valeant states, without citation, that the confidentiality agreement and protective orders in the *O'Brien/Hagerman* cases preclude Valeant from using documents produced in those cases in the present matter. (Dkt. 67, p. 10). A review of the protective orders in those cases shows Valeant's statement to be inaccurate -- no such prohibition is included. (*See O'Brien/Hagerman* protective orders, attached as Exhibits 3 and 4, respectively). Although the protective orders in those cases limit the disclosure of documents designated as "confidential," such limitation creates no impediment to Valeant's counsel reviewing and analyzing the documents in the present case because the same lawyers representing Valeant in the *O'Brien/Hagerman* cases also represent Valeant in the present action. Moreover, the *O'Brien/Hagerman* protective orders provide that "[n]othing in this Protective Order shall preclude a party from using or disclosing its own Confidential Discovery Material in any manner it sees fit, without the prior consent of any other party and without waiving its status as Confidential Discovery Material." (Exhibits 3 and 4, ¶ 25).

11

Lilly chose to direct Valeant to the documents already in Valeant's possession, which Lilly is entitled to do under the terms of the *O'Brien/Hagerman* protective orders. This source of the documents is more convenient, less burdensome and less expensive than the unreasonable relief sought by Valeant. *See* Federal Rule of Civil Procedure 26(b)(2)(C)(i). To the extent there remains any question, Valeant can be assured that Lilly consents to Valeant's counsel reviewing and using the documents produced in the *O'Brien/Hagerman* cases in the present action per the terms of the respective protective orders. Had Valeant met and conferred with Lilly regarding this issue, this portion of Valeant's Motion would have been unnecessary.

If Valeant nevertheless continues to insist that these already-produced documents that are responsive to its Request No. 11 be produced again in this lawsuit, Lilly is able to do that, as was explained to Valeant in correspondence dated December 22, 2009. (*See* Dkt 67, Ex. B). But under these circumstances, the duplicate production should be at Valeant's expense. (*Id.*) Valeant has not responded to Lilly's offer.

**D.**   **Valeant's Accusations Regarding the Attorney Conference on November 23, 2009 Are Inaccurate.**

Valeant's report to the Court regarding the attorney teleconference on November 23, 2009, is inaccurate, as are Valeant's unjustified accusations regarding Lilly's follow-up correspondence. The November 23 teleconference was requested *by Lilly* to address deficiencies *in Valeant's discovery responses*, not Lilly's discovery responses. (*See* Exhibits 5, 6, and 7 attached). Lilly had asked Valeant to amend its responses to clarify that its production would include documents regarding any due diligence conducted by Valeant prior to entering the Letter Agreement, as such information was probative of Valeant's professed intent to explore whether it has a claim for fraud in the inducement. (Exhibit 5).

During the teleconference, counsel for Lilly explained, again, that Lilly was seeking confirmation that Valeant would produce its due diligence documents relating to the Letter Agreement. Valeant's counsel responded that Valeant would produce its due diligence documents. Counsel for Valeant then asked whether Lilly was going to produce Lilly's due diligence documents. At that time, Lilly was in the process of preparing documents for production, and the undersigned counsel for Lilly did not know whether in fact Lilly had any due diligence documents. Counsel for Lilly said she would look into the issue and would advise counsel for Valeant. The sentence in Lilly's December 7 correspondence forwarding Lilly's documents that Valeant complains of, was doing just that – advising Valeant that in fact Lilly's due diligence documents were being produced. (Dkt. 67, Ex. D).

There was no "deliberate attempt at obfuscation" with respect to Request No. 11 as alleged by Valeant, and Valeant's accusations of such make no sense in light of Lilly's efforts to attempt to provide information responsive to Request No. 11, which are explained above and of which Valeant was well aware. Valeant's contention that Request No. 11 was the subject of the teleconference, which it admits occurred on November 23, also does not agree with the undisputed record. By November 23, Valeant already had filed a motion to compel regarding Valeant's Request No. 11. (Dkt. 60).[4]

Lilly has had to prepare two responses to motions to compel regarding an admitted fishing expedition by Valeant on a matter that has not even been asserted as a claim or defense in this case. One of the motions was filed even after Lilly identified more than 340,000 responsive

_____

[4] Valeant's continued attacks on Lilly and its counsel are unfounded and do nothing to advance discovery in this case. To the extent there legitimately was some confusion on Valeant's part, or "just a misunderstanding" regarding the intent of the sentence at issue in Lilly's December 7, 2009 correspondence, it easily could have been cleared up if Valeant had conducted the required meet and confer.

documents that already had been produced to Valeant.  Valeant's request for an order to compel regarding Request No. 11, both as originally tendered by Valeant, and as Valeant attempted to modify it in its Renewed Motion, is unreasonable and groundless, and should be denied.

**IV.     Lilly Should Not Be Compelled to Produce Documents Responsive to Request 14.**

Valeant's Request No. 14 seeks documents protected by attorney-client privilege and the work product doctrine.  Valeant claims it needs these documents so it can challenge the reasonableness of the defense costs and settlement costs paid by Lilly.  Valeant's arguments fail for the following reasons:

- Courts have determined that the production of such information is not relevant to determine the reasonableness of attorneys' fees a party is seeking to recover from its adversary.

- Even if these documents were marginally relevant, the burden of collecting, reviewing, preparing and producing these documents, which likely total over 1,000,000 pages, fails the proportionality requirement set forth in FRCP 26(b)(2)(C).

- Valeant's attempt to compel Lilly to produce these documents subverts the language of the Letter Agreement by allowing Valeant to obtain Lilly's work product for free.

Thus, Lilly's privilege should not be extinguished in favor of producing this information.

**A.     The Court's December 4 Order Did Not Compel Lilly to Produce Documents Responsive to Request No. 14.**

Valeant's attempt to transform the Court's isolated statement in its December 4 Order regarding Lilly's privilege concerns into an order compelling Lilly to produce documents responsive to Request No. 14 is unjustified.  The Court's statement does not address Lilly's other

14

objections that Request No. 14 is overly broad, unduly burdensome and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Moreover, the Court's reference to Lilly's privilege concerns being addressed by the Protective Order necessarily related to the concerns Lilly had regarding third parties to this action being able to discover the documents.  It does not address Lilly's objections regarding Valeant obtaining access to Lilly's privileged material.

These concerns are two-fold.  First, Valeant is seeking to obtain through the discovery process the very materials for which it claims it has no obligation to pay under the contract. Second, if Valeant's professed interpretation of the Letter Agreement is adopted by the Court, then Lilly's and Valeant's interests in the product liability cases are no longer aligned.  Instead, Lilly and Valeant each have every incentive to argue that fault should be attributed to the other by claiming liability arises from a "Lilly activity" or a "Valeant activity."  It is Lilly's position that the parties clearly intended to avoid this result by the cost-sharing provisions in the Letter Agreement that govern product liability claims.  However, Lilly would be prejudiced if required to produce its work product to Valeant, enabling Valeant to obtain the materials prepared by Lilly's counsel that may relate to issues such as liability for the product liability claims.

**B.     Documents Responsive to Request 14 Are Not Discoverable under FRCP 26 Because Valeant Does Not Have a Substantial Need for Them Nor Are They Relevant.**

Valeant's Request No. 14, on its face, seeks information that is protected by the attorney-client privilege and work product doctrine.  With regard to work product, FRCP 26(b)(3)(a) states, "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for another party or its representative…"  This Rule contains an exception:

> those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) The party shows that it has *substantial need* for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(emphasis added).   However, this exception is limited: "Rule 26(b)(3) of the civil rules distinguishes between materials 'prepared [by one's opponent] in anticipation of litigation" that contain "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation,' and those that do not contain such impressions, conclusions, etc."   *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768-769 (7th Cir. 2006).   The former are "out of bounds" and not subject to discovery.   *Id.*   Thus, Valeant may not discover the materials responsive to Request No. 14 that contain the mental impressions, conclusions, opinions, or legal theories of Lilly's attorneys.

Other work product may be discoverable, but only if Valeant shows it has a substantial need for the materials.   Substantial need is "seemingly something more than relevancy sufficient to satisfy Rule 26(b)(1)."   Wright & Miller, 8 FEDERAL PRACTICE AND PROCEDURE § 2025 (2d. ed. 1994).   Additionally, "The nature of the substantial need … must be articulated with specificity.   When it is not, then work-product protection will prevail."   Edna Selan Epstein, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 550 (4th ed. 2001).   Valeant has made no specific showing of its substantial need for the materials responsive to Request No. 14.   It has stated generally that it wants them to analyze the reasonableness of Lilly's attorneys' fees, but Valeant has said nothing about how it will use these materials to make this determination.   Without such a showing Valeant's request should be denied.

In fact, Valeant cannot show it has a substantial need for these materials in order to assess the reasonableness of Lilly's attorneys' fees, nor can it show these materials are reasonably

calculated to lead to the discovery of admissible evidence.   "[T]he method of quantifying a reasonable fee is a procedural issue governed by federal law in a diversity suit." *Oldenburg Group Inc. v. Frontier-Kemper Constructors, Inc.*, 597 F.Supp.2d 842, 847 (E.D.Wis. 2009). The procedures implemented by the Seventh Circuit to determine the reasonableness of attorneys' fees do not call for the analysis of the attorneys' entire file.   In this regard, the Seventh Circuit has outlined a system for quantifying reasonable attorneys' fees pursuant to the contractual   provision at issue.   *Id.* The court is to focus on the provisions in the parties' agreement, such as: "did the legal expenses result from [the] breach and, if so, were the fees reasonable (that is, were they fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves)?" *Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 200 F.3d 518, 521 (7th Cir. 1999).   Under this approach, a district court will not normally engage in a detailed, hour-by-hour review of the attorneys' bills.   *See id*. "Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; it *is* market value." *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.,* 73 F.3d 150, 153 (7th Cir.1996) (emphasis in original).   Thus, so long as the attorneys' fees are real fees that the party seeking reimbursement actually paid in the ordinary course of business (as Lilly did in this case with respect to the defense costs at issue), a court should find that the bills are commercially reasonable. *Oldenburg Group*, 597 F.Supp.2d at 847; *see also Medcom,* 200 F.3d at 520-21.

It is clear this system utilized by the Seventh Circuit does not include evaluating the entire body of the attorneys' work product in order to determine the reasonableness of the fees. There are numerous Seventh Circuit and Southern District of Indiana cases where the court has determined the reasonableness of attorneys' fees without analyzing the work product generated

by the attorneys during the course of the case.  *See, e.g., Harter v. Iowa Grain Co.,*  220 F.3d 544, 561 (7th Cir. 2000) ("But detailed billing records that a proponent avers are accurate provide the district judge-who presided over this case-with all the basis he needs to determine whether the fees are reasonable.");  *Branham v. Snow,*  2006 WL 1750443, 2 (S.D. Ind. 2006)  (Court awarded $779,826.06 in attorneys' fees without analyzing the attorneys' work product).  Further, the guidelines published by the Federal Judicial Conference do not call for the analysis of the attorneys' file to determine the reasonableness of the attorneys' fees.  *See* Alan Hirsch and Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation*, FEDERAL JUDICIAL CENTER (2005), at http://www.fjc.gov/public/pdf.nsf/lookup/attfees2.pdf/$file/attfees2.pdf.

Outside the Seventh Circuit, numerous courts have rejected arguments that the adversary needs the work product to analyze the reasonableness of the attorneys' fees.  In *Ex parte State Farm Fire and Casualty Company*, 794 So.2d 368 (Ala. 2001), the Alabama Supreme Court considered a case in which plaintiffs sought defense and indemnity from their insurer for a lawsuit filed against them.  *Id.* at 369-370.  Insurer denied coverage and, after plaintiffs dismissal from the lawsuit, plaintiffs filed suit against insurer seeking their attorney fees and costs incurred in the underlying lawsuit.  *Id.* at 370.  Insurer served a subpoena *duces tecum* on plaintiffs' attorneys seeking the attorneys' entire files related to the underlying lawsuit.  *Id.*

The Alabama Supreme Court upheld a trial court ruling refusing to compel the production of these documents.  *Id.* at 377.  Insurer argued it needed the requested documents in order to, among other things, address the issues of why plaintiffs retained separate counsel, whether the retention of two separate attorneys led to unnecessary duplication of effort, and why the attorneys had made no effort to collect the fees from the plaintiffs.  *Id.* at 371.  The Court rejected these arguments, holding that "the mere fact [plaintiffs] have claimed damages to

compensate for the attorney fees they incurred in the earlier action does not indicate a waiver of the attorney-client privilege." *Id.* at 376.  The Court allowed the insurer to discover billing statements and other billing-related documents, "redacted where necessary to protect substantive content." *Id.*  The Court explained how the insurer can examine the reasonableness of the attorneys' fees:

> The reasonableness of the attorney fees can be determined independently by use of expert testimony, without disclosure of the documents relating to the actual advice given by the attorneys to [Plaintiff].  Competent attorneys can examine the pleadings, discovery materials, and nonprivileged communications and review the invoices and from that examination form an opinion as to the number of hours that should have been expended on the case and the number of attorneys who would have had to work on it, and then render an opinion as to the reasonableness of the fees charged.

*Id.*  But the Court was emphatic that "the substantive content of the attorneys' files related to the earlier action is not essential to proof of [plaintiffs'] damages claim in their breach-of-contract and bad-faith action." *Id.*[5]

---

[5] Cases in numerous other jurisdictions have set forth similar guidelines.  *See, e.g. Honda Lease Trust v. Middlesex Mutual Assurance Co.*, 2007 WL 2889468, *3 (D. Conn. 2007) ("Nor is the privilege waived in light of the fact that the plaintiff seeks to collect the Campbell firm's attorney's fees. The reasonableness of the attorney's fees can be determined in the usual fashion, based on legal bills and affidavits, without any need for reviewing counsel's entire file."); *Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693, 15-16 (S.D.N.Y. 2002) ("The Court does not accept, however, that merely asserting a claim for indemnification of defense costs should vitiate the attorney-client privilege with respect to all aspects of a client's defense."); *Remington Arms Company v. Liberty Mutual Insurance Company*, 142 F.R.D. 408, 414 (D.Del. 1992) (applying Connecticut law) ("By claiming that its attorney's fees or actions in the underlying litigation were reasonable, [plaintiff] does not forfeit its protection of the privileged documents…"); *Mortgage Guarantee & Title Co. v. Cunha*, 745 A.2d 156, 160 (R.I. 2000) ("the mere fact that plaintiff made a claim for attorneys' fees as part of the claim for damages does not indicate a waiver of the attorney-client privilege."); *Deutsche Bank Trust Co. of Americas v. Tri-Links Inv. Trust*, 43 A.D.3d 56, 57, 837 N.Y.S.2d 15, 18 (N.Y.App.Div. 2007) ("A party suing to enforce an alleged right to indemnification for the costs of defending and settling a prior lawsuit does not thereby, without more, place at issue the party's privileged communications with counsel concerning the prior lawsuit and settlement."); *Citadel Holding Corporation v. Roven*, 603 A.2d 818 (Del. 1992) ("Any discovery here authorized should be limited to the quantum of the expenditure, including a specification of work performed.  The

The sole case cited by Valeant in support of its arguments, *Abbott Laboratories v. Alpha Therapeutic Corporation*, 200 F.R.D. 401, 403 (N.D. Ill. 2001), is not on point and does not support Valeant's arguments here.  Abbott sold Alpha its scientific products division, which had previously manufactured and sold certain blood products.  *Id.* at 403.  As part of the sale agreement, Abbott agreed to indemnify Alpha against certain claims arising out of the blood products.  However, the agreement also included a "Cooperation in Connection with Indemnification," "under which Alpha was obligated to make available to Abbott at all times all business records related to any suit underlying a claim for indemnification from Abbott . . ." *Id.* In the ensuing suit over the agreement, Abbott sought documents relating to Alpha's "legal analysis" of actual or potential liability" to claims for sales of the products.  *Id.* at 404. Alpha claimed the documents were privileged but the Court disagreed because of the clear and unambiguous language of the cooperation clause.  *Id.*  By agreeing to that clause, Alpha had agreed to provide all documents to Abbott regardless of any otherwise applicable privileges.  *Id.* at 405-07 and 410.

The situation here is completely different.  Foremost, Lilly did not agree to provide its privileged communications to Valeant under the Letter Agreement.  Second, under the Seventh Circuit standards discussed above, and the cases cited, work product is not necessary to evaluate the reasonableness of attorneys fees.  Moreover, Lilly's privileged communications are not central to the question of whether Valeant is obligated to reimburse Lilly for a portion of the defense costs.  The cost allocation formula in the Letter Agreement is straightforward and is based solely on the date that written notice of an intent to assert a claim is first received.  It is

---

mental processes or other work product of the attorney who billed the time is not subject to disclosure.")

nothing like the complex system set forth in the agreement between Abbott and Alpha, where indemnity depended on a complicated factual determination.

Valeant also argues that *Abbott* stands for the proposition that the work product is the only way to assess if settlement costs were reasonable. But, yet again, the facts of this case are distinguishable from *Abbott*. Valeant was involved in every product liability case at issue prior to its settlement or other resolution, and it participated in strategy decisions. Moreover, until the O Claim,[6] Valeant paid its share of each settlement entered in the product liability actions in accordance with the schedule in section 10.3 of the Letter Agreement. (Dkt. 44, Ex. 1. at ¶¶s 13-15, 17-20, 22.) Even with respect to the O Claim, Valeant was informed of the settlement amount in advance, said it had no objection thereto, and attended the mediation during which the O Claim was settled. (*Id.* at ¶¶s 17-20.)

Valeant does not need, and should not be allowed, to delve into Lilly's entire universe of work product and attorney-client communications on the pretext of evaluating the reasonableness of Lilly's costs. This work product is germane to ongoing litigation and future litigation. "The work-product doctrine shields materials that are prepared in anticipation of litigation from the opposing party, on the theory that the opponent shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy, or … invite the jury to treat candid internal assessments of a party's legal vulnerabilities as admissions of guilt." *Mattenson*, 438 F.3d at 767-768. Principles of fairness and consistency mandate that Valeant's attempts to circumvent and frustrate the contractual terms through its discovery requests be denied.

---

[6] As discussed in Lilly's Brief in Support of Motion for Partial Summary Judgment, the term "O Claim" refers to a product liability claim that was asserted against Lilly and others and which was settled pursuant to a settlement agreement containing a confidentiality clause that prohibits Lilly from identifying the case or its parties by name. (Dkt. 45, p. 7, n. 4).

C.     **Valeant's Discovery Requests Violate the Proportionality Requirements of FRCP 26.**

The Federal Rules impose a proportionality requirement on discovery requests, and the discovery sought by Valeant in its Request No. 14 clearly fails this requirement.  FRCP 26(b)(1) states all discovery is subject to the limitations set forth in FRCP 26(b)(2)(C).  FRCP 26(b)(2)(C) provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> *****
> (iii)  the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The reference to FRCP 26(b)(2)(C) was added to FRCP 26(b)(1) by the 2000 Amendments in order "to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery."  Advisory Committee Notes to 2000 Amendments to FRCP 26(b)(1).

The mandatory language of the rule signals the importance of addressing proportional discovery that weighs the cost and burden against the benefit, as well as the 'needs of the case' and the importance of the discovery in 'resolving the issues.'  This rule was the subject of a recent opinion decided in July, 2009 by Magistrate Judge Magnus-Stinson in *Boimah Flomo, et.al., v. Bridgestone Americas Holding Inc.,* 2009 WL 2178039 (S.D. Ind. July 22, 2009),  in which the Court denied plaintiffs' expedited motion to compel.

The Court noted that it "must" use its discretion to deny technically proper discovery that is unreasonably cumulative or that would impose oppression or undue burden or expense, citing Fed. R. Civ. P. 26(b)(2)(C).  *Id.* at*5-6.  The Court observed,

The Court is charged with balancing 'the burden or expense of proposed discovery with its likely benefit." Fed. R. of Civ. Pro. 26(b)(2)(iii). *See also Northwestern Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 931 (7th Cir.2004) (explaining that while "pretrial discovery is a fishing expedition and one can't know what one has caught until one fishes," the discovery rules allow the fish to object). Africa is too far, Liberia is too dangerous, and time is too short for Plaintiffs go on what is-according to the present record-a fishing expedition for information that may not exist or may be available from more relevant sources. And as required by Rule 26(b)(2), the Court cannot allow it.

*Id*. at *4. *See also Sabratek Liquidating LLC v. KPMG LLP*, 2002 WL 31520993, *4 (N.D.Ill. 2002) (Court, citing FRCP 26(b)(2)(iii), denied request for documents; relevance of documents did not justify "a potentially enormous amount of production on the part of" defendant).

Assuming arguendo that documents responsive to Request No. 14 are relevant to determining the reasonableness of Lilly's attorneys' fees (a point Lilly disputes), the burden and/or expense of forcing Lilly to collect and produce documents responsive to Request No. 14 outweighs their pertinence to the case, particularly given that more pertinent information is available from a more relevant source – the invoices.

Lilly has defended multiple cases regarding Permax. Lilly has retained Ice Miller LLP ("Ice Miller") as its national counsel in these cases, and has also retained local counsel in these cases. Ice Miller has conducted a preliminary evaluation of the quantity of documents potentially responsive to Request No. 14. More than 15 different timekeepers have worked on the Permax cases since 2003. (Affidavit of Rebecca Seamands at ¶ 4, attached hereto and made a part hereof as Exhibit 8.) Ice Miller's preliminary search has revealed it has at least 150 banker's boxes worth of hard copy documents regarding Permax. (*Id.* at ¶ 3.) In the document management industry it is standard to anticipate each box has 2500 to 3000 pages of documents, meaning these boxes may contain over 375,000 pages of documents relating to Permax.

With regard to electronic documents, Ice Miller has performed a preliminary analysis to identify documents potentially responsive to Request No. 14 in the e-mail accounts of Rebecca

Seamands and Kim Metzger, two of the Ice Miller attorneys having significant involvement in the Permax cases.  (Affidavit of Christopher Long at ¶ 3, attached hereto and made a part hereof as Exhibit 9.)  This analysis consisted of searching the subject lines of Ms. Seamands' and Ms. Metzger's emails, with a date restriction of after February 25, 2004, for the terms "Permax" or the last names of the plaintiffs in the Permax cases.  (*Id.* at ¶ 4.)  These searches yielded 37,172 e-mails.  (*Id.* at ¶ 5.)  When exported to PST format this generated 18.8 gigabytes of electronic documents.  (*Id.* at ¶ 5.)  The electronic document management industry generally estimates that, when processed, one gigabyte of image files will generate approximately 15,477 pages of documents, one gigabyte of Microsoft Word files will generate approximately 64,782 pages of documents, and one gigabyte of email files will generate approximately 100,099 pages of documents.  *See* LexisNexis, *Discovery Services Fact Sheet* (last visited January 5, 2010), available at   http://www.lexisnexis.com/applieddiscovery/lawlibrary/whitePapers/ADI_FS_PagesInAGigabyte.pdf. Therefore, if processed, the Seamands and Metzger e-mail data (which include email, Word, image, and other file types) will likely generate at least 290,967 pages and possibly up to 1,881,861 pages of documents.

If the searches were run through the text of Ms. Seamands' and Ms. Metzger's emails – rather than just in the subject line field – it is likely more emails would be found.  Further, Ice Miller has not quantified the e-mails of the other timekeepers and has not searched its document management system for documents potentially responsive to Request No. 14.  Additional documents responsive to Request No. 14 are in the possession of Lilly's local counsel (some of whom Lilly shared with Valeant) and the outside document management service vendor Lilly has used in the Permax cases.

In addition to these boxes of documents and electronic files, Lilly also has extensive attorney work product that was created in the processing, reviewing and coding of the INDs/NDA files for Permax.  Information contained within the INDs/NDA files has been sought by plaintiffs in the Product Liability Claims.   As part of preparing these documents for production, Lilly undertook extensive review and coding of the INDs/NDA files, including the redaction of confidential patient information.  Because of the size of the INDs/NDA files, this process required thousands of attorney hours and additional expenses.  The INDs/NDA files were transferred to Valeant in July 2005.  However, Valeant does not have a copy of Lilly's work product relating to these materials.  Valeant should not be permitted to use discovery in this case to obtain the benefit of this costly undertaking by Lilly, which Valeant has not paid for and to which it is not otherwise entitled.  Moreover, as discussed herein, this work product performed on behalf of Lilly is not relevant to the issues in this lawsuit.

The burden of merely collecting documents responsive to Request No. 14 is great.  Moreover, Lilly must review these documents before they are produced.  For instance, the searches performed to identify electronic documents responsive to Request No. 14 likely would yield many non-responsive, confidential documents relating to other matters and/or clients.  The searches also may yield documents pertaining to Ice Miller's representation of Lilly in this lawsuit, which Valeant has not asserted it is entitled to obtain.  The documents would need to be reviewed so that these nonresponsive documents could be identified and protected.

Further, even if the Court determines that some of Lilly's work product is relevant and is otherwise discoverable, Lilly must be afforded the opportunity to redact the mental impressions and advice rendered to Lilly by its attorneys.  *See Mattenson,* 438 F.3d at 768-769; *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1304 (Fed. Cir. 2006).  The content of such

25

impressions and advice has nothing to do with the reasonableness of Lilly's attorneys' fees, and Lilly is entitled to protect these documents from disclosure to Valeant. Overall, Lilly must perform a thorough review of its documents, and this review likely would take months to complete. This burden must be factored in when weighing the burden or expense of the discovery versus its likely benefit. *See In re: General Instrument Corporation Securities Litigation*, 1999 WL 1072507, *6 (N.D.Ill. 1999).

The costs of collecting and reviewing documents responsive to Request No.14 are high. Preliminary estimates show processing the 18.8 gigabytes constituting the results of the search performed on Ms. Seamands' and Ms. Metzger's email data would cost more than $18,000. (Long Aff. at ¶ 6). Preliminary estimates show that merely scanning the paper documents and applying OCR in accordance with the terms of the Parties' Agreed Plan Regarding the Discovery of Electronically Stored Information ("ESI") and the Production of Documents (Dkt. 37) will cost $0.1175 per page. (Long Aff. at ¶ 7). Assuming there are 375,000 pages of paper documents this will cost over $40,000. Assuming there are 500,000 pages of documents to review (and the page count will likely exceed 500,000 after all documents are collected), it will likely require more than 3,000 attorney hours to review these documents. The burden to Lilly of producing these documents far outweighs their relevance to the issues in this case.

Neither the relevant legal authority, nor the unique contractual provisions and underlying facts of this case, justifies the extraordinary request for Lilly's work product that has been tendered by Valeant. Valeant is able to evaluate the reasonableness of Lilly's costs by reviewing the invoices that will be produced (as redacted to protect mental impressions, opinions and legal theories developed by Lilly's counsel, *see Barlow v. General Motors Corp.*, 2008 WL 906169, *4 (S.D.Ind. 2008) (redaction may be used to protect privileged information in invoices

26

submitted with fee applications); *State Farm*, 794 So.2d at 376 (invoices may be "redacted where necessary to protect substantive content"); N.D.Ill. Local Rule 54.3(d)(1) (party seeking fees must produce time and work records, but "[t]hese records may be redacted to prevent disclosure of material protected by the attorney-client privilege or work product doctrine")). Valeant's motion with respect to Request No. 14 should be denied.

> **D.     Valeant Should Not Be Able to Subvert the Intent of the Letter Agreement by Obtaining Lilly's Work Product for Free.**

Valeant seeks to obtain Lilly's work product without paying for it. It is Valeant's position that the agreement does not require Valeant and Lilly to share in defense costs – period. In their bid to contest the interpretation of the contract, Valeant is requesting broad discovery that will give them complete access to all of the work product generated on behalf of Lilly, and paid for by Lilly, in the defense of all product liability claims, while refusing to acknowledge any obligation to pay for it now or in the future.

Lilly has spent years generating this work product at a cost of millions of dollars. This work product is voluminous, spanning numerous boxes of paper documents and gigabytes of electronic data. This work product is valuable. Lilly depends on this work product to defend itself in the products liability action, and, if disclosed, Valeant may use it as well. The Letter Agreement reflects an intent of Valeant and Lilly to share efforts in defending the product liability claims and, similarly, share costs. Valeant cannot piggy-back on Lilly's efforts without owning up to its financial obligations to share the defense cost of claims as set forth in the Letter Agreement.

**V.     Valeant's Continued Attacks and Allegations of Bad Faith on the Part of Lilly Are Contradicted by the Record.**

Valeant's allegations of bad faith by Lilly in the discovery process are unfounded. Valeant argues that Lilly is engaged in a "dictatorial pattern regarding discovery matters in this lawsuit"  (Dkt.  69, p.1).  To the contrary, Lilly has worked diligently to conduct discovery in compliance with the rules and this Court's orders.

Valeant repeatedly emphasizes that its discovery requests were tendered in August, and argues that Lilly has acted dilatory and has failed to conduct discovery in good faith and with diligence.  These accusations, like others made by Valeant, ignore the actual course of events. Lilly timely tendered its objections and responses to Valeant's document requests on September 14, 2009, and on the same day filed its Motion to Bifurcate because it had a good faith objection that Valeant's extremely broad document requests sought information irrelevant in this contract dispute. (Dkt. 48).  During the period that Lilly's Motion to Bifurcate was pending, Lilly worked to prepare documents responsive to Valeant's requests, which process was explained to Valeant in correspondence dated October 5, 2009, and also was set forth in detail in Lilly's Response to Valeant's [First] Motion to Compel  (Dkt. 62, pp. 5-10).  Lilly received notice of the Court's Order denying Lilly's Motion to Bifurcate through the ECF filing system on December 7, 2009. (Dkt. 64).  *That same day*, Lilly produced to Valeant more than 20,900 pages of documents, and identified another more than 340,000 pages of documents already in Valeant's possession, that were responsive to Valeant's requests relating to liability issues.[7]

---

[7] Lilly actually had indicated it would produce the liability documents that Valeant contended it needed to respond to Lilly's motion for partial summary judgment even before the Court's December 4, 2009 Order was entered.  (Dkt 62, filed on December 1, 2009).

Lilly also has explained to Valeant that it is preparing documents responsive to Requests Nos. 5 and 6 (which relate to damages issues) and will be producing them in accordance with the deadlines set forth in the Court's Order Amending Case Management Plan.  Valeant's allegations of bad faith and dilatory conduct are baseless.

## VI.    Valeant Has Resisted Lilly's Efforts to Conduct Discovery.

By contrast to Lilly's efforts in advancing discovery, Valeant has taken positions that essentially would amount to a stay preventing all discovery in this case other than the discovery into irrelevant matters that Valeant is seeking.  Valeant represented to the Court on October 28, 2009, that it was "prepared to provide an electronic set of responsive documents to Lilly." (Dkt. 57, p. 2).  In reality, Valeant did not produce its documents to Lilly until December 11 and 18, 2009.  For more than two months, Valeant failed to respond to Lilly's repeated requests regarding whether counsel for Valeant would accept service of subpoenas duces tecum for several witnesses.  (Dkt. 68, Ex. 2).  More recently, Valeant has stated that Valeant will not proceed with five non-party depositions (of witnesses that Valeant's counsel finally has said they represent) that Lilly has noticed until after Valeant receives all of Lilly's documents, including documents clearly relating to damages.  (Exhibit 2.)  Valeant's tactics of attempting to prevent Lilly from conducting discovery as to liability issues prior to the discovery deadline contravenes this Court's Order Amending Case Management Plan, as well as Federal Rule 26(d)(1), which provides in relevant part that, "Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:   (A) methods of discovery may be used in any sequence; and (B) *discovery by one party does not require any other party to delay its discovery*." (Emphasis added.)

Valeant also has indicated its intent to resist the type of discovery it contends Lilly is required to provide.  On December 15, 2009, Lilly served Valeant with a Second Request for Production that requested, among other things, Valeant's invoices, and proof of payment of invoices, for the product liability claims (similar to Valeant's Request Nos. 5 and 6 to Lilly). (*See* Exhibit 10, attached, Request Nos. 7 and 8).   Lilly also requested Valeant's work product in the underlying product liability claims because, in the unlikely event the Court determined that Valeant's Request No. 14 to Lilly sought information relevant to the issues in the current litigation, then it would follow that Valeant's work product also is relevant.[8]  (*Id.*, Request No. 11).  Though Valeant's time for responding to these requests has not yet run, Valeant already has informed the Court and Lilly that it intends to object to these requests and will refuse to produce responsive documents.  (Dkt. 67, pp. 7-8).   Valeant's position should be rejected for three reasons.

First, Valeant justifies its position on the basis that it is not currently seeking reimbursement of its costs.  However, Valeant again makes it clear that it plans to seek leave to recover its national counsel fees if the Court rules in favor of Lilly on the contract interpretation issue presented by Lilly's motion for partial summary judgment. (Dkt. 67, p. 8).  Valeant's plan to delay discovery of its damages documents until after the Court rules on the meaning of the

---

[8] As Lilly has advised Valeant, Valeant's Request No. 14 is overly broad and burdensome and seeks information that is privileged and irrelevant.  These objections are discussed in detail in section IV herein.  Lilly also has advised Valeant that it tendered a similar request to Valeant (Lilly's Request No. 11 in Lilly's Second Request for Production to Valeant) in case the Court disagrees with Lilly and determines that Lilly must produce documents responsive to Valeant's Request No. 14.  (Dkt. 67, Ex. C).  If the Court agrees with Lilly and denies Valeant's motion to compel the production of documents responsive to Valeant's Request No. 14, then likewise, Valeant would not be required to produce documents responsive to Lilly's Request No. 11 in Lilly's Second Request for Production to Valeant.

contract is the same relief previously requested by Lilly in its Motion to Bifurcate, which Valeant strenuously opposed and the Court denied.

Second, the operative provision in the Letter Agreement regarding the sharing of costs requires an allocation in accordance with the percentages set forth in schedule 10.3.  (*See* Dkt. 44, Attachment #7).  Thus, to calculate its damages per the schedule, Lilly requires information regarding the costs incurred by Valeant in the product liability cases so that the total costs can be determined, allowing a calculation per the percentages in schedule 10.3.  Regardless of whether Valeant currently is seeking, or indeed is ever permitted to seek, recovery of its national counsel fees, Lilly requires this information in order to calculate its own damages.

Third, Valeant's damages documents are relevant to the issue of Valeant's stated plan to challenge the reasonableness of the costs paid by Lilly.  Valeant and its counsel have been involved in the Product Liability Claims since the execution of the Letter Agreement.  The costs incurred by Valeant in those cases, and the attendant defense work performed in connection therewith are probative as to the reasonableness and value of the defense costs for which Lilly paid.  The relevance of this information has been recognized by the Northern District of Illinois, where a local rule requires parties opposing fee petitions to disclose their own time and work records related to costs incurred.  N.D.Ill. Local Rule 54.3(d)(5).  Additionally, Lilly believes Valeant's damages documents will reflect the extent to which Valeant's counsel was relying on Lilly's counsel to perform much of the defense work for the benefit of all defendants – an outcome consistent with the clear terms of the Letter Agreement that contemplated that defense costs would be shared per the schedule in 10.3.

In sum, either both parties' invoices are relevant, or neither parties' are.  Either both parties' work product is relevant, or neither parties' is.

For the reasons set forth above, Eli Lilly and Company, by counsel, respectfully requests the Court deny Valeant's Renewed Motion to Compel and issue all other relief just and proper in the premises.

Respectfully Submitted,

ICE MILLER LLP

*/s/  Rebecca J. Seamands*
Mary Nold Larimore
Rebecca J. Seamands
Kimberly C. Metzger
One American Square, Suite 2900
Indianapolis, Indiana 46282-0200
(317) 236-2100
*Attorneys for Plaintiff Eli Lilly and Co.*

32

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11th, 2010, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Elizabeth Abbne Coleman
JENNER & BLOCK, LLP
ecoleman@jenner.com

Larry Gene Evans
HOEPPNER WAGNER & EVANS LLP
levans@hwelaw.com

F. Joseph Jaskowiak
HOEPPNER WAGNER & EVANS LLP
jjaskowiak@hwelaw.com

Lise T. Spacapan
JENNER & BLOCK, LLP
lspacapan@jenner.com

Casey T. Grabenstein
JENNER & BLOCK, LLP
cgrabenstein@jenner.com

/s/  *Rebecca J. Seamands*
Rebecca J. Seamands

I/2424645.1

33